**Ex parte Manojar ALLOJU, Relator.**

No. C14–94–01203–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 23, 1995.

Jerome Wade, Dallas, for relator.

Cheryle R. Johnston, Houston, for Townewest Homeowners Association, Inc.

Before MURPHY, YATES and FOWLER, JJ.

## OPINION

YATES, Justice.

Manojar Alloju, relator, seeks a writ of habeas corpus alleging he is illegally incarcerated in the Fort Bend County Jail for contempt by virtue of a "Commitment" issued by the Justice Court, Precinct Three, of Fort Bend County. The justice court held relator in contempt for violating its order to answer interrogatories in aid of judgment and its show cause order. We deny relator's writ of habeas corpus.

On February 16, 1994, Townewest Homeowners Association, Inc. (Townewest), by and through its attorney Cheryl R. Johnston, filed suit against relator in Justice Court, Precinct Three, of Fort Bend County in Cause No. CD04–163A to recover attorney's fees incurred in the collection of maintenance fees assessed against property allegedly owned by relator. Townewest moved for summary judgment. In response to Townewest's motion for summary judgment, relator claimed that he was not the owner of the property; rather, he simply signed a promissory note, as an accommodation, along with the "true owners," Toutreddy Bhanumathi and Chitimella Sadhvimani, so these "true owners" could qualify for a mortgage. In other words, relator contended that he simply signed the note and the supporting deed of trust to provide security to the mortgagee. Based on these allegations relator objected to the justice court's jurisdiction of the suit because the suit involved a determination of title to land. *See* TEX.GOV'T CODE ANN. § 27.031(b)(4) (Vernon Supp.1995).

The justice court granted summary judgment in favor of Townewest on June 28, 1994. Townewest was awarded $1,242.00 plus attorney's fees, costs, and prejudgment interest. The summary judgment was never appealed by relator and therefore, is a final judgment.

On July 27, 1994, Townewest served Interrogatories in Aid of Judgment on the relator. The relator, by his own admission, did not file or serve written answers to the interrogatories. On September 19, 1994, Townewest filed a motion in the justice court to compel relator to answer the interrogatories. The justice court granted Townewest's motion on September 26, 1994. A copy of the order was forwarded to relator and he received it on October 5, 1994. Still, relator did not answer the interrogatories.

On October 12, 1994, Townewest filed a motion for contempt against relator based on his refusal to answer the interrogatories. The justice court signed an Order to Show Cause on October 13, 1994. On October 25, 1994, Johnston caused to be issued a subpoena for relator. She wrote a letter to Constable Glen Cheek, Precinct 5, requesting that he serve relator with the subpoena, the show cause order, and other documentation. Johnston enclosed two copies of the show cause order, a copy of the subpoena, several other documents, and a check for forty-five dollars. The officer's return on the subpoena shows that relator was personally served by a constable on November 10, 1995. On the same day, relator's attorney, Jerome K. Wade, sent a letter to Johnston asking her to agree to a postponement of the show cause hearing that had been set for November 29, 1994.

Five days later, relator, through his attorney, filed an Original Petition in the 234th Judicial District. In his petition, relator alleged Townewest and Johnston had defamed him and conspired to defame him. He also asked the trial court to declare that the judgment rendered against him in the justice court was void for want of jurisdiction. On November 21, 1994, relator asked the 234th District Court for a temporary restraining order and a temporary injunction to halt the show cause hearing set for November 29, 1994. This request was denied by the ancillary judge on November 29, 1994.

Relator failed to appear at the show cause hearing. On November 30, 1994, the justice court signed a judgment of contempt and order of commitment. In that document, the court found:

1. Neither relator nor his attorney appeared at the show cause hearing.

2. Relator failed to answer post-judgment discovery after the court ordered him to do so on September 26, 1994. Relator received proper notice of the order.

3. The court signed a show cause order on October 13, 1994, ordering relator to appear for the hearing on November 29, 1994. Relator was personally served with copy of the order on November 10, 1994.

4. Relator has continually violated the September 26, 1994, order by his failure to answer the interrogatories.

5. Relator has violated the show cause order by failing to appear for the show cause hearing.

Based on the above, the court held relator in contempt for violating the court's order to answer the interrogatories and failing to appear for the show cause hearing. The court ordered relator placed in the Fort Bend County Jail until he purged himself of the contempt by answering the interrogatories "fully and completely." The court ordered that an Order of Commitment be issued commanding the sheriff or any constable of Fort Bend County to arrest relator and place him in the county jail. Relator was also ordered to pay Townewest $400.00 in attorney's fees incurred in the enforcement of the September 26, 1994, order.

Relator was ultimately taken into custody and placed in the Fort Bend County Jail. On December 13, 1994, relator filed a Petition for Writ of Habeas Corpus in this court. It is from the justice court's November 30, 1994, judgment and order of commitment that relator filed his writ of habeas corpus.

Relator first contends that he is illegally confined because the judgment issued by the justice court is void and further, that because the commitment order is based on this void judgment, it too, is void. Relator asks this court to review the judgment and hold that both it and the commitment order are void.

■ An original habeas corpus proceeding is a collateral attack on the contempt judgment. *See Ex parte Rohleder*, 424 S.W.2d 891, 892 (Tex.1967) (orig. proceeding). The relator must conclusively show his entitlement to the writ. *Ex parte Crawford*, 506 S.W.2d 920, 922 (Tex.Civ.App.—Tyler 1974, orig. proceeding). A court will issue a writ of habeas corpus if the order underlying the contempt is void, *Ex parte Shaffer*, 649 S.W.2d 300, 302 (Tex.1983), or if the con-

tempt order itself is void. *Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex.1979). An order is void because it is beyond the power of the court to enter, or because it deprived the relator of liberty without due process. *Ex parte Friedman*, 808 S.W.2d 166, 168 (Tex. App.—El Paso 1991, orig. proceeding).

■ Before a court may hold a party in contempt, three things are necessary: (1) jurisdiction of the subject matter; (2) jurisdiction of the person; and (3) authority of the court to render the particular judgment. *Ex part Salfen*, 618 S.W.2d 766, 769 (Tex.Crim. App.1981). The relator in this case attacks the justice court's jurisdiction of the subject matter. He argues the justice court did not have jurisdiction of the subject matter of the civil action in which judgment was rendered for Townewest. In support of his argument, relator cites Tex.Gov't Code Ann. § 27.031(b)(4) (Vernon Supp.1995) which states:

(b) A justice court does not have jurisdiction of:

\* \* \* \* \* \*

(4) a suit for trial of title to land.

Relator bases this argument on his claim, in response to Townewest's motion for summary judgment, that he was not the "true owner" of the property in question. He contends this was a suit for trial of title to land. We disagree.

■ Where title to real estate is put in issue in a suit, only a district court has jurisdiction over the suit; the justice court does not have jurisdiction. *Fry v. Ahrens*, 256 S.W.2d 115, 116 (Tex.Civ.App.—Galveston 1953, no writ). However, where the issue of title to real estate is only incidentally or collaterally involved, the district court does not have original jurisdiction, rather, any inferior court having jurisdiction of the amount in controversy would be the proper forum in which to litigate. *Id.; Smith v. Armes*, 208 S.W.2d 409, 410 (Tex.Civ.App.—Fort Worth 1948, no writ). In *Greer v. Todd*, 266 S.W. 618, 618 (Tex.Civ.App.—Texarkana 1924, no writ), Greer sued Todd in the justice court for $191.63, the amount of taxes which Greer was compelled to pay and

which he alleged Todd should have paid. The taxes were on land Todd conveyed to a party who ultimately sold the land to Greer. *Id.* The suit was dismissed in the justice court because that court concluded the suit was one involving title to land. *Id.* The county court agreed and sustained Todd's plea to the jurisdiction. *Id.*

On appeal, however, the Texarkana Court of Appeals held that both lower courts erred in dismissing the suit for want of jurisdiction. *Id.* The court stated:

> Plainly, looking to the allegations in the appellant's [Greer's] petition, the suit was not one to try the title to the land, but was for damages for breach of a covenant warranting the title thereto to be in appellee free of incumbrance for taxes due thereon. [citations omitted] That being the nature of the suit, and it being for an amount not exceeding $200, the justice court had original jurisdiction to hear and determine it.

*Id.*

■ We find *Greer* analogous to the situation before us. Townewest sought nothing more than recovery of money damages within the jurisdictional limits of the justice court. The issue of ownership of the property was raised by relator and was only incidental to the recovery of the maintenance fees. Townewest never sought title to the land, nor has it ever tried to change the title. We hold that the issue of title to land in the case before us is only incidentally involved; therefore, the justice court did have jurisdiction over the subject matter of the suit and neither the judgment or the commitment order is void. Accordingly, relator's writ cannot be granted on this basis.

■ Relator next complains he was denied due process because "he was never given proper notice of the action that was to be taken against him." A contemnor must receive actual notice of the hearing. *Ex parte Peterson,* 444 S.W.2d 286, 288–90 (Tex.1969). A recitation in a contempt order that relator was duly cited and served with notice to appear is not controlling on the due process

issue. *Ex parte Garza,* 593 S.W.2d 114, 116 (Tex.Civ.App.—Amarillo 1979, orig. proceeding).[1]

■ We find relator's claim incredible. The record shows no less than three instances when relator or his attorney admit that notice was given and received. First, on the same day that the officer's return shows that relator was served, relator's attorney, Jerome K. Wade, sent a letter to Townewest's attorney asking her to agree to a postponement of the show cause hearing. Clearly, the attorney knew about the show cause order and the hearing. Attached to that same letter was a Debtors' Rule 5010 Motion to Reopen Bankruptcy Case filed by Mr. Wade on behalf of relator. In paragraph ten of that motion, the following appears:

> 10. Creditors [Townewest] have mounted a vigorous campaign against debtor to collect the judgment. They have written demanding and threatening letters to debtor. They abstracted the judgment in Harris County, Texas, had a writ of execution issued against debtor, served debtor with postjudgment interrogatories and requests for production of documents, filed a motion to compel discovery and a motion for contempt, **and had a "show cause" order issued and served upon debtor.**

(emphasis added) This motion was sworn to by Mr. Wade in an affidavit attached to the motion. In that affidavit, Mr. Wade swore:

> That he makes this affidavit based on information provided by MANOJAR ALLOJU who has asserted to the affiant that he has personal knowledge of the statements contained in the foregoing motion to reopen this bankruptcy case; and that the statements are true and correct.

Five days later, relator filed his original petition in the 234th Judicial District. In that petition, the relator alleged conspiracy and defamation. In that petition, relator stated:

> 11. Defendants have mounted an unrelenting campaign to collect the judgment

---

1. We note here that the justice court did recite in its contempt order that relator had been properly served with notice.

against plaintiff. Defendants have written demanding and threatening letter to plaintiff. They abstracted the judgment in Harris County, Texas, had a writ of execution issues against plaintiff, served plaintiff with postjudgment interrogatories and requests for production of documents, filed a motion to compel discovery and a motion for contempt, and **had a "show cause" order issued and served upon plaintiff.** (emphasis added) This essentially tracks the language used in paragraph ten of the motion to reopen bankruptcy. At the time the original petition was filed, relator also filed a Motion for Temporary Restraining Order and Temporary Injunction. In that motion, relator again stated that Townewest "had a 'show cause' order issued and served upon plaintiff." Only this time he specifically stated that the hearing on the show cause order is set for November 29, 1994. Attached to the back of this motion is another affidavit executed by Mr. Wade stating that the motion is based on information he received from Manojar Alloju and that Mr. Wade was authorized to:

> ... state for and on behalf of plaintiff [Alloju] that plaintiff is competent to make this affidavit and that plaintiff has personal knowledge of the information given to counsel upon which the motion is based, and that such information is true and correct; and That he has personal knowledge of the statements contained herein; that the statements are made freely without any threats, duress or coercion; and that the statements are true and correct.

We find it astonishing in light of the record that relator would have the temerity to argue that he did not receive notice. He stated in numerous court documents that he received notice. In fact, he, through his attorney, swore on two separate occasions that he received notice of the show cause hearing. Relator's due process contention is without merit and will not support the issuance of a writ of habeas corpus.

Lastly, relator complains that he is unlawfully restrained because the purging provision in the commitment order does not clearly state what acts he must perform to obtain his release. A commitment order is the warrant, process, or order by which a court directs a ministerial officer to take custody of a person. *Ex parte Hernandez,* 827 S.W.2d 858, 858 (Tex.1992).

■ Commitment orders must have the same degree of specificity as contempt orders. *See Ex parte Alford,* 827 S.W.2d 72, 74 (Tex.App.—Houston [1st Dist.] 1992, orig. proceeding). A contempt order must be clear and unambiguous. *Ex parte MacCallum,* 807 S.W.2d 729, 730 (Tex.1991). Such an order must be viewed as a whole to determine if it is clear and specific. *Ex parte Johns,* 807 S.W.2d 768, 773 (Tex.App.—Dallas 1991, orig. proceeding). While an order must set out its requirements in clear and specific terms, it need not negate every conceivable exercise of discretion by the contemnor in order to be enforceable. *See Ex parte McManus,* 589 S.W.2d 790, 793 (Tex.Civ. App.—Dallas 1979, orig. proceeding). The order must be reviewed using a reasonable person standard. *Ex parte Wessell,* 807 S.W.2d 17, 19 (Tex.App.—Houston [14th Dist.] 1991, orig. proceeding); *Ex parte Graham,* 787 S.W.2d 141, 143 (Tex.App.—Houston [14th Dist.] 1990, orig. proceeding).

■ The commitment order requires relator to answer the Interrogatories in Aid of Judgment "fully and completely." We do not find this vague or ambiguous. Only one set of Interrogatories in Aid of Judgment was served on relator. These are the interrogatories he is to answer. Relator argues he does not know who to deliver them to once he has answered them. This is the type of "flight of fancy" that the Dallas Court of Appeals disapproved of in *McManus.* 589 S.W.2d at 793. Who else would relator give them to but the party seeking the answers?

As to the phrase "fully and completely," this phrase is easily understood under the *reasonable person* standard. Under rule 215 1(c), a party may not provide "evasive or incomplete" answers. Such answers constitute no answer at all. Tex.R.Civ.P. 215 1(c). The language used in this rule is not vague, and the language in the commitment order has the same tenor. We hold the order is not vague.

Further, even if the order were vague, it would not necessarily exonerate relator from the finding of contempt. A relator who totally ignores the order can be held in contempt even if the order is vague. *Ex parte Crawford*, 684 S.W.2d 124, 136 (Tex.App.—Houston [14th Dist.] 1984, orig. proceeding). In this case, relator did not even attempt to answer the interrogatories. This is not a case of a relator constrained of his liberty because his answers were inadequate.

Relator's writ of habeas corpus is denied, his bond is revoked, and he is remanded to the custody of the Fort Bend County Sheriff.