**Ex parte Albert DURHAM, Jr.**

**No. 13–95–564–CV.**

Court of Appeals of Texas,
Corpus Christi.

April 18, 1996.

E. Dale Robertson, Brownsville, for Relator.

Edward Watt, Austin, Larry Spence, Sheriff, Willacy County, Raymondville, for Interested Parties.

Before DORSEY, YAÑEZ and CHAVEZ, JJ.

## OPINION

YAÑEZ, Justice.

Albert Durham, Jr., relator in this habeas corpus proceeding, presents four grounds for relief. First, he complains that the civil contempt portion of the court's contempt order inadequately specifies what actions he must take to purge himself of contempt. Next, Durham asserts that final judgment in the underlying case absolved him of any duty to comply with prior orders. Third, he contends that an order revoking bond upon the determination that he had not purged his civil contempt resulted in a void modification of the contempt order. And, finally, Durham raises a double jeopardy argument based on the revocation of his bond. We deny the application for writ of habeas corpus and order Durham remanded into the custody of the Willacy County sheriff.

This proceeding rose in the aftermath of Joseph Sutton's lawsuit against Durham, Brian Vermaak, and Strut Cam Dimensions, Inc. That underlying dispute involved the breach of a joint venture agreement to purchase ostriches in Africa and raise them in Costa Rica to produce eggs for sale in the United States market.

During pretrial discovery, Durham and Vermaak produced documents damaging to their case. After the court reporter had established custody over those documents, Durham and Vermaak removed the documents from the court reporter's office so they could not be made part of the record. Judge Menton Murray granted Sutton's consequent motion for sanctions and ordered "Defendant ALBERT DURHAM must produce to Plaintiff all of his business records from January 1, 1992 to the present" by January 12, 1994. In February, Sutton took a postanswer default judgment against all three defendants although Durham had not yet returned the missing records or otherwise complied with Judge Murray's order. That judgment is now final. *See Strut Cam Dimensions, Inc. v. Sutton,* 896 S.W.2d 799 (Tex.App.—Corpus Christi 1994, writ denied) (dismissing appeal because appellant filed transcript late).

During postjudgment discovery, Judge Darrell Hester conducted a hearing to consider both Sutton's motion to allow additional interrogatories and Durham's countermotion

to quash. Judge Hester granted Sutton's motion and ordered Durham "to answer, fully and completely, all of the interrogatories filed and served upon said Defendants on or about September 29, 1994 and to produce all of the documents requested in the Requests for Production filed and served upon said Defendants on or about September 24, 1994" by January 12, 1995.

By July 7, 1995, Durham had neither produced any documents nor fully answered the interrogatories. On that date, Judge Rogelio Valdez conducted an evidentiary hearing to consider Durham's noncompliance as alleged in Sutton's motion for contempt, which is not part of the record before us.[1] After noting that all parties were present and represented by counsel, Judge Valdez's order provides:

Specifically, the Court finds that Defendant Durham has been and remains in continuing contempt of the order granting Plaintiff's motion for sanctions dated December 13, 1993 and signed by the Honorable Judge Menton Murray, Jr. on February 1st, 1994 in that Defendant had not produced any (much less all) of the documents ordered by Judge Murray to be produced. In addition, Defendant has been and remains in contempt of the order dated December 12, 1994, and signed by the Honorable Judge Darrell Hester on January 11, 1995 in that Defendant has failed to produce any of the documents so ordered to be produced and has failed to answer fully and completely the interrogatories as ordered.

It is therefore ordered, adjudged and decreed that Plaintiff's motion is Granted. It is further

Ordered, adjudged and decreed that Defendant Durham, being in criminal contempt of this Court, be immediately taken into custody and held in jail, without bail, for a period of two months. It is further

Ordered, adjudged and decreed that Defendant Durham, being in civil contempt of this Court, be held in jail for an additional period of one day for each day after the date of this Order that defendant remains in contempt of this Court.

Durham was released on bond after he had been confined for five days. Judge Hester conducted a hearing on Sutton's motion to revoke bond. At that hearing, Judge Hester determined that Durham had not purged himself of the civil contempt. Judge Hester further determined that Judge Valdez's contempt order required that Durham serve the civil contempt sentence before the two-month sentence for criminal contempt.

## ADEQUACY OF PROVISION FOR PURGING CIVIL CONTEMPT

By his first ground for relief, Durham complains that the contempt order fails to specify what actions he must take to purge himself of civil contempt. The standard of specificity necessary to meet the constitutional requirements of due process varies depending on the type of contempt at issue. The law surrounding the trial court's contempt powers makes two distinctions relevant to this habeas corpus case.

First, the law distinguishes between direct contempt and constructive contempt. *Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex.1995). Direct contempt involves disobedience or disrespect in the presence of the court, while constructive contempt occurs outside the court's presence. *Id.; Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex.1979). The contempt alleged in this case, violation of written court orders, is constructive contempt because it occurred outside the presence of the court.

The second distinction relevant to this case is the difference between civil contempt and criminal contempt. This distinction does not depend on whether the underlying case is civil or criminal, but on the nature and purpose of the court's punishment. *Ex parte Werblud*, 536 S.W.2d 542, 545–46 (Tex.1976).

The object of civil contempt is to coerce the contemnor to comply with some order of the court. *Id.* Imprisonment under a civil contempt order compels future compliance through the use of a provision by which

---

1. Omission of the motion for contempt could be considered fatal to Durham's application for writ of habeas corpus, Tex.R.App.P. 120(7), but we will attempt to address Durham's complaints on their merits.

the contemnor may purge the contempt. In contrast, criminal contempt proceedings involve the court's confinement of the contemnor as punishment for a completed affront to the court in order to vindicate the court's authority. *Id.* at 545; *see also Ex parte Alloju*, 907 S.W.2d 486, 487 (Tex.1995) (characterizing civil contempt as coercive incarceration and criminal contempt as punitive incarceration)..

■ The contempt order under review includes both criminal and civil contempt provisions in one order, which is within the trial court's authority. *Ex parte Sanchez*, 703 S.W.2d 955, 957 (Tex.1986). Under relator's first ground of relief, however, we need only consider the validity of the order's civil contempt provision, which is based on Durham's constructive contempt.

■ Because the court confined Durham for constructive contempt, the contempt order (as well as the orders Durham failed to obey) must be written in clear language specifying Durham's obligations. *Ex parte Quevedo*, 611 S.W.2d 711, 712 (Tex.App.—Corpus Christi 1981, orig. proceeding); *see also Ex parte Brister*, 801 S.W.2d 833, 834 (Tex. 1990). Interpretation of these orders should not rest on implication. *Ex parte Blasingame*, 748 S.W.2d 444, 446 (Tex.1988); *Ex parte Kraus*, 863 S.W.2d 104, 106 (Tex. App.—Corpus Christi 1993, orig. proceeding). However, an order "is insufficient to support a judgment of contempt only if its interpretation requires inferences or conclusions about which *reasonable* persons might differ." *Chambers*, 898 S.W.2d at 260. The order need not be "full of superfluous terms and specifications adequate to counter any flight of fancy a contemnor may imagine in order to declare it vague." *Kraus*, 863 S.W.2d at 106 (quoting *Blasingame*, 748 S.W.2d at 446).

■ Because the provision under review involves civil contempt, the contempt order must spell out exactly what Durham can do to purge the contempt. *See Ex parte Proctor*, 398 S.W.2d 917, 918 (Tex.1966). In this case, the contempt order provides only that Durham will be held "one day for each day after the date of this Order that defendant remains in contempt of this Court." This civil contempt provision does not reiterate exactly what Durham must do to purge himself of contempt. Nevertheless, this omission does not automatically render the provision impermissibly vague. The order should be viewed as a whole to determine if it is clear and specific. *Ex parte Johns*, 807 S.W.2d 768, 773 (Tex.App.—Dallas 1991, orig. proceeding). Viewed as a whole, the order yields only one reasonable interpretation: Durham must produce documents as Judges Murray and Hester ordered and answer interrogatories as Judge Hester ordered.

■ This determination does not end our review. Ultimately, contemnors held for civil contempt should be able to look in the record and find some written order spelling out exactly what duties and obligations are imposed on them. *Ex parte Padron*, 565 S.W.2d 921, 924 (Tex.1978) (citing *Ex parte Slavin*, 412 S.W.2d 43, 44 (Tex.1967)). Because the purgative language from the contempt order under review implicitly incorporates terms from the orders Durham failed to abide, we must also consider those underlying orders.

Judge Murray ordered Durham to produce "all of his business records from January 1, 1992 to the present." This is unambiguous. Durham cannot complain about the vagueness of obligations imposed by Judge Murray because those duties are clearly specified in a signed, written order that is part of the record. *See Padron*, 565 S.W.2d at 924 (citing *Slavin*, 412 S.W.2d at 44). Similarly, Judge Hester ordered the production of "all of the documents requested in the Requests for Production filed and served upon said Defendants on or about September 24, 1994." As with Judge Murray's order, Judge Hester's order to produce documents entails duties fully delineated in a signed, written order that is part of the record.

Judge Hester further ordered Durham to "answer, fully and completely, all of the Interrogatories filed and served upon said Defendants on or about September 29, 1994." At least one other court has found a similar order sufficiently specific to serve as the basis for civil contempt. *See Ex parte Allo-*

*ju,* 894 S.W.2d 85, 90 (Tex.App.—Houston [14th Dist.], orig. proceeding) (denying relief), *relief granted on other grounds,* 907 S.W.2d 486 (Tex.1995). The Fourteenth Court of Appeals concluded that "the phrase 'fully and completely' ... is easily understood" and no more vague than the requirement that answers to discovery should not be "evasive or incomplete." *Id.* (citing TEX. R.CIV.P. 215 1(c)). In the absence of a copy of the disputed interrogatories, which are not included in the record before us, we must agree with the Fourteenth Court of Appeals.

Based on the limited record that Durham has presented to this court, we cannot conclude that the contempt order fails to specify what he must do to purge himself of the contempt. Accordingly, we cannot grant habeas corpus relief on Durham's first ground.

### POSTJUDGMENT EFFECT OF PRETRIAL SANCTION

By his second ground for relief, Durham contends that a final judgment in the underlying case absolved him of any duty to comply with Judge Murray's sanction order. In support of his argument, Durham cites *Schein v. American Restaurant Group,* 852 S.W.2d 496 (Tex.1993), and *Ex parte Grothe,* 581 S.W.2d 296 (Tex.Civ.App.—Austin 1979, orig. proceeding). Both cases are distinguishable.

The *Schein* case involved a sanction barring the introduction of evidence for a failure to respond to a discovery request in a timely manner. Specifically, the Texas Supreme Court determined that such a sanction did not survive a nonsuit of the action in which the sanction was imposed. *Id.* at 497 (citing *Aetna Casualty & Sur. Co. v. Specia,* 849 S.W.2d 805, 806–07 (Tex.1993), which involved the same issue).

In both *Schein* and *Aetna Casualty,* the supreme court looked to the nature and purpose of the sanctions to determine whether they survived a nonsuit. *Schein,* 852 S.W.2d at 497; *Aetna Casualty,* 849 S.W.2d at 806–07. In both cases, the supreme court determined that the purposes of the discovery sanctions were to promote full pretrial assessment of the case and to prevent trial by ambush. *Schein,* 852 S.W.2d at 497; *Aetna*

*Casualty,* 849 S.W.2d at 807. Because the nonsuit effectively postponed litigation and provided a second opportunity to consider the disputed evidence, nonsuit eliminated the rationale underlying the sanctions. *Schein,* 852 S.W.2d at 497; *Aetna Casualty,* 849 S.W.2d at 807.

The *Aetna Casualty* court specifically acknowledged that pretrial sanctions would survive a nonsuit under other circumstances. *Aetna Casualty,* 849 S.W.2d at 807 n. 4. Expanding on this notion, the *Schein* court held that the sanction did not survive nonsuit but explicitly noted that the sanction at issue was not imposed "because of any bad faith conduct." *Schein,* 852 S.W.2d at 497.

In our case, Judge Murray's order granting sanctions was based on findings that Durham had engaged in the improper removal of documents from the official record. The continuing effect of sanctions based on such bad faith conduct is not governed by *Schein* or *Aetna Casualty.* *Schein,* 852 S.W.2d at 497; *Aetna Casualty,* 849 S.W.2d at 807 n. 4. Nevertheless, *Schein* and *Aetna Casualty* provide the proper framework in which we must determine whether Judge Murray's sanctions order survives disposition of the action. We must look to the nature of the sanction to ascertain whether the underlying purpose of the sanction is served by the continuing postjudgment effect of the sanction. *See Schein,* 852 S.W.2d at 497; *Aetna Casualty,* 849 S.W.2d at 806–07.

■ Unlike the *Schein* and *Aetna Casualty* sanctions, Judge Murray's sanction did not seek to promote pretrial assessment of the case or prevent trial by ambush. Instead, Judge Murray's order sought to punish and remedy Durham's bad faith discovery practices. The order requiring Durham to "produce to Plaintiff all of his business records from January 1, 1992 to the present" covers documents in addition to those removed from the record. Judge Murray entered this broad order after hearing evidence of Durham's efforts to hide the existence of his businesses. The underlying circumstances and scope of Judge Murray's order suggest that the sanction's purposes included

the goal of identifying Durham's business interests.

Judge Valdez's postjudgment contempt proceeding rose, in part, from Durham's failure to comply with discovery that would enable Sutton to collect his judgment. Durham's postjudgment attempts to hide his business interests and other assets were a continuation of the bad faith conduct that led to Judge Murray's pretrial sanctions order. The pretrial goal of requiring Durham to disclose his business interests is equally relevant to the postjudgment dispute. Entry of a final judgment in this case did not blunt the purpose of Judge Murray's pretrial sanctions order. Accordingly, the *Schein* and *Aetna Casualty* cases militate in favor of the view that Judge Murray's sanctions order should remain effective at least through postjudgment discovery. *Cf. Schein,* 852 S.W.2d at 497; *Aetna Casualty,* 849 S.W.2d at 806–07.

Durham is equally mistaken to rely on *Ex parte Grothe,* 581 S.W.2d 296. In that case, the court held the obligations attendant to the entry of a final divorce decree superseded obligations under the temporary orders entered during the pendency of the case. *Id.* at 297; *but see, e.g., Ex parte Shaver,* 597 S.W.2d 498, 500 (Tex.Civ.App.—Dallas 1980, orig. proceeding) (questioning *Grothe*). Under the analysis suggested by *Schein* and *Aetna Casualty,* however, entry of a final judgment in our case did not supersede Durham's obligations under Judge Murray's pretrial sanctions order. Accordingly, the *Grothe* case is inapposite to the question under review.

Because the purposes underlying Judge Murray's sanctions order remain to be served, we reject Durham's second ground for relief.

## ALLEGED MODIFICATION OF CONTEMPT ORDER

By his third ground for relief, Durham contends that Judge Hester's bond revocation order modified Judge Valdez's contempt order after jurisdiction to modify the contempt order had expired. This argument attacks Judge Hester's order revoking bond and rests on Durham's assumption that Judge Hester modified Judge Valdez's contempt order. We cannot accept this assumption.

In his order revoking bond, Judge Hester interpreted Judge Valdez's contempt order to require that Durham serve the sentence for civil contempt before serving the criminal contempt sentence. This interpretation is based on the requirement that Durham "be held in jail for an additional period of one day for each day after the date of this Order that defendant remains in contempt of this Court."

Judge Hester's interpretation of the contempt order does nothing more than effect the unambiguous intent that the civil contempt and criminal contempt sentences should run consecutively. The civil contempt sentence is clearly intended as "an additional period" of confinement. Moreover, the civil contempt sentence in this case is unusual in that it is defined to begin on the date of the order rather than on the date when the sentence for criminal contempt is completed. *Cf., e.g., Ex parte Occhipenti,* 796 S.W.2d 805, 806, 810 (Tex.App.—Houston [1st Dist.] 1990, orig. proceeding) (discussing more typical combination of civil and criminal contempt provisions in a single order where civil sentence runs from completion of criminal sentence).

■ The combination of civil and criminal contempt provisions in a single order usually results in a period of punitive confinement followed by coercive confinement limited by a purging provision. *See, e.g., Chambers,* 898 S.W.2d at 258 (civil contempt sentence to begin at completion of criminal contempt sentence and to run for so long after completion of criminal contempt sentence as contemnor remains in contempt). In the typical situation, the contemnor need not serve any of the sentence for civil contempt if he or she purges the contempt while serving the criminal contempt sentence. *See Occhipenti,* 796 S.W.2d at 810 (under such contempt orders, issues relevant to civil contempt are not even ripe for habeas corpus relief until criminal contempt sentence has been served). This more ordinary method of combining civil contempt and criminal provisions often results in

the contemnor serving the two sentences concurrently. Judge Hester did not modify Judge Valdez's contempt order by rejecting an interpretation of the order that would have allowed Durham to serve the two sentences concurrently. Clearly, Judge Valdez did not intend that Durham should be allowed to serve the two sentences concurrently.

Durham has not questioned Judge Valdez's authority to order the two contempt sentences to run consecutively. Instead, Durham challenges Judge Hester's interpretation of Judge Valdez's contempt order. In light of the record and issue that Durham has presented, we cannot agree that Judge Hester increased Durham's sentence under Judge Valdez's contempt order or otherwise modified Judge Valdez's order.

■■■ Even if we broadly construe Durham's complaint as a challenge to the excessive length of the combined criminal and civil contempt sentences, this challenge would not be ripe for relief. *Cf. Sanchez,* 703 S.W.2d at 957 (considering right to jury in contempt proceedings in which consecutive sentences might have run in total for more than six months). In order for Durham's combined sentence to last over six months, for example, he would have to continue his refusal to purge the civil contempt for another two months. We cannot presume that Durham will continue to disrespect the Judges' orders, and so we cannot reach any challenge to the combined length of the cumulative contempt sentences. *Id.*

Accordingly, we deny Durham's third ground for relief.

### *DOUBLE JEOPARDY*

■■■ By his final ground for relief, Durham complains that Judge Hester's bond revocation order violates double jeopardy protections by ordering the sentences to run cumulatively. As in the previous ground for relief, Durham questions Judge Hester's bond revocation order rather than Judge Valdez's contempt order. In support of this argument, Durham quotes from *Bullock v. State,* 705 S.W.2d 814 (Tex.App.—Dallas 1986, no pet.):

[A] trial court may not add a cumulation order onto a sentence already imposed after the defendant has suffered punishment under the sentence as originally imposed.

*Id.* at 815. We recognize that the constitutional double jeopardy protections apply in contempt proceedings. *See Ex parte Hudson,* 917 S.W.2d 24, 25–26 (Tex.1996). We also recognize that Durham had already begun to serve his contempt sentences when Judge Hester interpreted the contempt order to require the two sentences to be served cumulatively. As discussed above, however, Judge Hester did not add the cumulation provision to Judge Valdez's sentences for criminal and civil contempt of court. The cumulation order was clearly part of Judge Valdez's contempt sentences as originally imposed, and Durham has not challenged Judge Valdez's contempt order under this ground for relief. Because Judge Hester's bond revocation order did not "add a cumulation order onto a sentence already imposed," we deny Durham's final ground for habeas corpus relief. *Cf. Bullock,* 705 S.W.2d at 815. Accordingly, we deny Durham's application for writ of habeas corpus and order him remanded into the custody of the Willacy County sheriff.

DORSEY, J., not participating.