**Ex parte Mary Ann ACKER.**

**No. 96–0932.**

Supreme Court of Texas.

July 9, 1997.

William E. Jones, Booker T. Morris, Houston, for relator.

Patsy Young, Houston, for respondent.

PHILLIPS, Chief Justice, delivered the opinion of the Court, in which CORNYN, ENOCH, SPECTOR, BAKER and ABBOTT, Justices, joined.

In this original habeas corpus proceeding, relator challenges her confinement for non-payment of child support. The trial court ordered relator incarcerated under two separate contempt orders, one relating to regular monthly child support and the other relating to a separate health insurance obligation.

We hold that the first order is unenforceable because the trial court did not inform relator of her right to counsel when she appeared pro se at the contempt hearing. We further hold that the second order is unenforceable because the divorce decree provision mandating the insurance payments is too vague to enforce by contempt. Accordingly, under Texas Rule of Appellate Procedure 122, without hearing oral argument, we order relator discharged.

## I.  Factual Background

Relator Mary Ann Acker and Sherman Acker divorced in 1990. Sherman received custody of their only child, and the trial court ordered Mary Ann to pay monthly child support of $500, plus $50 per month to Sherman for health insurance for their child.

In 1993, Sherman moved for contempt, alleging that Mary Ann was behind in her $500 monthly support obligation. (This motion did not address the $50 per month insurance obligation.) The parties appeared for the contempt hearing on May 5, 1993, and announced to the trial court that they had reached an agreement. Mary Ann was not represented by counsel at this hearing. The court did not admonish her of her right to counsel. Under the agreement, Mary Ann admitted that she had willfully failed to make child support payments resulting in an arrearage of $8,553. The parties agreed that she should be sentenced to 180 days in jail for criminal contempt, and thereafter for coercive contempt until she paid the full arrearage. However, the parties further agreed to suspend the sentence upon Mary Ann's immediate payment of $1,000, and thereafter monthly payments of $100 against the arrearage, and Mary Ann's timely payment of the ongoing support obligation. The court rendered judgment of contempt in accordance with the parties' agreement.

Although Mary Ann paid the $1,000 lump sum, she later missed several $100 monthly arrearage payments. In 1996 Sherman moved to revoke the suspension of commitment. Sherman also filed a second, independent motion for contempt based on Mary Ann's failure to make the $50 per month insurance payments. The parties appeared

for a hearing on both these motions on June 14, 1996. Mary Ann was represented by counsel at this hearing.

On the motion to revoke suspension, Sherman presented evidence that Mary Ann had not made the $100 monthly arrearage payments since June 1995. Mary Ann testified that she had been unemployed for part of 1995 and had been unable to make the payments. However, Sherman introduced her wage withholding statements showing that Mary Ann earned about $60,000 that year. The court revoked the suspension, committing Mary Ann to jail for 180 days, and thereafter until she pays the full arrearage, in accordance with the terms of the May 1993 agreed judgment. The trial court rejected Mary Ann's argument that the contempt judgment was void because the trial court did not admonish her of her right to counsel at the 1993 hearing.

On the separate contempt motion, Sherman presented evidence that Mary Ann had never made any of the $50 monthly insurance payments. The court rendered a separate contempt judgment for this nonpayment, sentencing Mary Ann to jail for 180 days for criminal contempt and thereafter for coercive contempt until she paid the $5,490 arrearage. The 180 day sentence was to run concurrently with the 180 days assessed under the first contempt judgment.

Mary Ann was confined on June 14, 1996. After unsuccessfully seeking relief from the court of appeals, she filed a petition for habeas corpus with this Court. We ordered her released on bond on October 15, 1996.

### II. The First Contempt Order

■ Mary Ann argues that the first contempt order is void and unenforceable because the trial court did not admonish her of her right to counsel when she appeared at the original contempt hearing on May 5, 1993. The Family Code guarantees an alleged contemner's right to counsel:

If the court determines that incarceration is a possible result of the proceedings, the court shall inform a respondent not represented by an attorney of the right to be represented by an attorney and, if the

respondent is indigent, of the right to the appointment of an attorney.

TEX. FAM.CODE § 157.163(b). This provision clearly required the court to admonish Mary Ann of her right to counsel, which the court did not do.

■ Sherman argues that incarceration was not a possible result of the May 1993 hearing because the parties had agreed to suspend commitment based on Mary Ann's payment of the arrearage. However, incarceration was an ultimate possibility if Mary Ann did not comply with the terms of the suspension, which is precisely what happened. Her commitment in June 1996 was based, in part, on the sentence imposed under the May 1993 agreed judgment.

■ Sherman further argues that Mary Ann was not indigent at the time of the 1993 hearing. However, section 157.163 requires courts to admonish pro se litigants of their right to counsel, regardless of whether they are indigent or not. Sherman misplaces his reliance on *Ex parte Sustrik*, 721 S.W.2d 592 (Tex.App.—Fort Worth 1986, orig. proceeding). In *Sustrik*, the court simply held that a non-indigent party is not entitled to appointed counsel. The case did not deal with the failure to give the Family Code statutory admonishment.

We hold that the court's failure to admonish Mary Ann of her right to counsel renders the commitment arising from the May 1993 contempt order void. *See Ex parte Keene*, 909 S.W.2d 507, 508 (Tex.1995); *Ex parte Gunther*, 758 S.W.2d 226, 227 (Tex.1988).

### III. The Second Contempt Order

The divorce decree, signed November 15, 1990, requires Mary Ann to make insurance payments as follows:

Mary Ann Acker is ordered and decreed to pay $50.00 per month as her cost of insuring the child to Sherman Lloyd Acker beginning on the 1st day of June and $50.00 per month on the 1st day of each and every month thereafter.

While the decree specifies "June 1" as the beginning date, it does not specify a year. The trial court found Mary Ann in contempt for failing to make the monthly payment in

December 1990 (the month following entry of the decree) and in each month thereafter. The court imposed a 180–day sentence as one punishment for these multiple acts of contempt. Mary Ann contends, however, that because the decree does not specify the year that the payment obligation begins, it is too ambiguous to enforce by contempt.

■ To be enforceable by contempt, a decree must "set forth the terms of compliance in clear, specific and unambiguous terms so that the person charged with obeying the decree will readily know exactly what duties and obligations are imposed upon him." *Ex parte Chambers*, 898 S.W.2d 257, 260 (Tex. 1995). Sherman, relying on *Ex parte Malone*, 788 S.W.2d 411 (Tex.App.—Houston [1st Dist.] 1990, orig. proceeding), argues that, where no year is specified, the court should construe the obligation as arising immediately. In *Malone*, the divorce decree provided that child support payments were to commence on "November 9" without stating the year. The court held that this order was sufficiently clear to enforce by contempt, concluding that "the normal meaning of this language is that the payments were to start immediately." *Id.* at 411. Regardless of whether *Malone* was correctly decided, an issue we do not decide, it is distinguishable on its facts. Unlike in this case, the date specified for the child support payments to start in *Malone*—November 9—was the precise date that the decree was signed, lending support to the trial court's conclusion that the payments were to "start immediately."

■ Sherman does not explain why the divorce decree, signed in November 1990, recites "June" as the beginning date for the health-insurance payments. When the decree was drafted, the "June" date may have been intended to refer to June 1990, as the trial court heard the case in May of that year. Notably, the decree provides that the regular child support obligation begins on June 1, 1990.[1] This may explain why the trial court punished relator for missing insurance payments beginning in December 1990,

the first month after the decree was signed. However, while one may infer that the "June" commencement date for the insurance payments was intended to be June 1990, interpretation of the decree "should not rest upon implication or conjecture." *Ex parte Blasingame*, 748 S.W.2d 444, 446 (Tex.1988). Rather, the decree must set forth the obligation in "clear, specific and unambiguous terms." *Chambers*, 898 S.W.2d at 260. Here, there is simply no way to determine with sufficient certainty what year the insurance obligation began. For example, the court rendering the decree could have concluded, based on its overall allocation of responsibilities between the parents, that Sherman should bear the entire insurance burden for some period of time, with Mary Ann's obligation commencing in June of some future year. While the record does not indicate that such is the case, the point is that it is not beyond the realm of reason and the decree does not preclude that conclusion.

Sherman also relies on *Ex parte Payne*, 598 S.W.2d 312 (Tex.Civ.App.—Texarkana 1980, orig. proceeding). The divorce decree in *Payne*, signed in September 1965, ordered the father to pay "the sum of Twenty and No/100 ($20.00) Dollars per week for the support and maintenance of the minor child until such child becomes eighteen years of age." *Id.* at 314. The father defaulted after making these payments for four years, and was held in contempt. In seeking relief by habeas corpus, the father argued that the decree was ambiguous because it did not provide a beginning date for the child support obligation. The court rejected this argument, relying on the fact that relator had made the child support payments for four years before defaulting. This circumstance distinguishes *Payne* from our present case, in which Mary Ann never made any of the insurance payments.

For the foregoing reasons, we hold that the insurance obligation is too vague to enforce by contempt.

The Court orders relator discharged.

---

1. The trial court's contempt order recites that relator was ordered to make the insurance payments "on May 15, 1990." This finding, however, references the final divorce decree, signed November 15, 1990. The record does not reflect, and neither party suggests, that the trial court signed a written order about the insurance payments other than the final decree signed in November 1990.

OWEN, Justice, joined by GONZALEZ and HECHT, Justices, concurring in part and dissenting in part.

I agree with most of the Court's opinion. I cannot agree, however, that the provision of the divorce decree directing Mary Ann Acker to pay $50.00 per month as her share of the cost of insurance is unenforceable by an order of contempt.

The provision at issue says:

MARY ANN ACKER is ORDERED AND DECREED to pay $50.00 per month as her cost of insuring the child to SHERMAN LLOYD ACKER beginning on the 1st day of June and $50.00 per month on the 1st day of each and every month thereafter.

The hearing on the divorce was held in May 1990. For reasons that are not apparent from the record, the divorce decree containing this provision was not signed until November 1990. The Court concludes, and I agree, that the trial court erred in holding Mary Ann Acker in contempt for failing to make payments from and after December 1990. But the trial court could hold Acker in contempt for failing to make payments on June 1, 1991 or on the first of any month thereafter. The Court erroneously concludes that because there is no year after "the 1st day of June," the provision is ambiguous and too uncertain to support a finding of contempt under any set of circumstances.

I strongly suspect that if the divorce decree had been signed in May 1990, instead of November 1990, the Court would have little difficulty in concluding that Acker was unambiguously required to pay $50.00 per month for insurance on June 1 of 1990 and each month thereafter. The fact that the decree was signed in November should not affect the analysis.

The next June 1st after November 1990 was June 1st of 1991. There can be no confusion or dispute about this. The order unambiguously provides that payments are to commence on June 1st and are to continue each and every month thereafter. The parties and the trial court may well have intended for the provision to take effect on June 1 of 1990, since the divorce hearing was held in May 1990, and they could have anticipated that a signed decree would be in place by June 1 of that year. However, even if that were the subjective intent, the ordinary meaning of the unambiguous language used in the decree controls. See City of Pinehurst v. Spooner Addition Water Co., 432 S.W.2d 515, 518 (Tex.1968) (stating that when there is an unambiguous writing, objective, not subjective, intent controls)

Courts have had no difficulty in enforcing child support provisions that adequately advise a parent of his or her responsibilities. In Ex parte Malone, 788 S.W.2d 411 (Tex. App.—Houston [1st Dist.] 1990, orig. proceeding), the divorce decree directed the father to pay $20.00 per week beginning on November 9. No year was specified. The court of appeals correctly concluded that this adequately informed the relator of what he must do and when he must do it. Id. at 411–12. The Court attempts to distinguish Malone by reasoning that the order at issue in that case was signed on November 9, 1973 and provided that payment was to begin on "November 9." This, the Court says, supports the trial court's conclusion that payment was to begin "immediately." 788 S.W.2d at 411. I see no distinction between "immediately" and the first June 1 after the decree was signed.

Other decisions upholding orders of contempt in the face of claims of ambiguity include Ex parte Tanner, 904 S.W.2d 202, 204–05 (Tex.App.—Houston [14th Dist.] 1995, orig. proceeding) (rejecting argument that child support order was vague because it did not specify location for payment); Ex parte Mathis, 822 S.W.2d 727, 731 (Tex.App.—Tyler 1991, orig. proceeding) (rejecting argument of ambiguity in location for child support payments, noting that relator was not held in contempt for failing to make payments at proper place, but for failing to make payments at all); Ex parte Graham, 787 S.W.2d 141, 142–43 (Tex.App.—Houston [14th Dist.] 1990, orig. proceeding) (holding that temporary divorce order directing husband to make monthly mortgage payments starting in September could not be construed to have more than one meaning even though no payee, due date, or amount was specified,

because husband would know details of required payments).

The Court's reasoning that there may have been some basis for doubt about Acker's obligation is implausible. The Court says:

[T]he court rendering the decree could have concluded, based on its overall allocation of responsibilities between the parents, that Sherman should bear the entire insurance burden for some period of time, with Mary Ann's obligation commencing in June of some future year.

*Ante* at 317.

The Court is quick to point out that "the record does not indicate that such is the case." *Ante* at 317. I submit that this explanation of why the decree is ambiguous is "beyond the realm of reason," to use the words of the Court. *Id.* When the provisions of the decree regarding insurance are considered in their entirety, it is readily apparent that Sherman was never to "bear the entire insurance burden for some period of time." *Id.* The respective rights and obligations of the parents were specifically allocated in the decree:

SHERMAN LLOYD ACKER is ORDERED AND DECREED to keep and maintain at all times in full force and effect the medical health insurance coverage that now insures the parties' child through insurance certificate number 587–30–1741–1 as issued by Metropolitan Life Insurance Company, or successor company, on its group plan with Bendix Aerospace Company, or through such group plan as is available through other employment or other insurance provider. SHERMAN LLOYD ACKER is ORDERED AND DECREED to have the child covered as a dependent on his health care plan and MARY ANN ACKER is ORDERED AND DECREED to pay $50.00 per month as her cost of insuring the child to SHERMAN LLOYD ACKER beginning on the 1st day of June and $50.00 per month on the 1st day of each and every month thereafter. IT IS ORDERED AND DECREED that MARY ANN ACKER pay sixty percent (60%) of any unpaid or non-covered medical/dental procedures, consultations, and/or evaluations, not covered under SHERMAN

LLOYD ACKER's group health care plan. IT IS FURTHER ORDERED AND DECREED that SHERMAN LLOYD ACKER is to pay forty percent (40%) of any unpaid or non-covered medical/dental procedures, consultations, and/or evaluations, not covered under his group health care plan.

SHERMAN LLOYD ACKER is ORDERED AND DECREED to furnish to MARY ANN ACKER a true and correct copy of such major medical and health insurance policy or certificate and schedule of benefits as well as an identification card showing proof of insurance eligibility for the child, within fifteen (15) days following the signing of this Decree of Divorce, by certified mail, return receipt requested.

Even when there is some ambiguity in a divorce decree, courts have upheld contempt orders when parents disregarded their obligations entirely. *See Ex parte Linder,* 783 S.W.2d 754, 757–58 (Tex.App.—Dallas 1990, orig. proceeding) (rejecting ambiguity argument when child support order stated two different amounts because "[a] relator who knows with certainty that he is required to pay either $250 a month or $112.50 twice a month can be punished for contempt for choosing to ignore the order completely"); *Ex parte Parrott,* 723 S.W.2d 342, 343–44 (Tex.App.—Fort Worth 1987, orig. proceeding) (rejecting argument that child support order was ambiguous because it did not name to whom to make the payments); *Ex parte Crawford,* 684 S.W.2d 124, 126 (Tex.App.—Houston [14th Dist.] 1984, orig. proceeding) (upholding contempt from child support order that contained different amounts because relator was aware that he was obligated to pay at least the lesser amount and ignored the order completely). Acker made no insurance payments at all under the decree. Even if she was uncertain in her own mind about whether her obligations commenced on June 1 of 1990 or June 1 of 1991, she knew that those obligations began on June 1, 1991 *at the latest.* She made no insurance payments for almost six years.

There is no doubt that in crafting decrees, the parties and courts should be careful to include entire dates. But when, as in this

case, the obligation is reasonably clear from the face of the decree, the plain, ordinary meaning of a court order should be enforced. The Court's decision allows parents like Acker, who know full well their obligations, to shirk those obligations with impunity.