**In re Dean JOHNSON.**

**No. 09–99–020 CV.**

Court of Appeals of Texas,
Beaumont.

July 29, 1999.

Tyrone Cooper, 1st Assistant City Attorney, Beaumont, for appellant.

J. Trenton Bond, Reaud, Morgan & Quinn, Paul A. Scheruich, Jacqueline M. Stroh, Benckenstein, Norvell & Nathan, Beaumont, for appellee.

Before WALKER, C.J., BURGESS, and STOVER, JJ.

## OPINION

STOVER, Justice.

Relator Dean Johnson ("Johnson") brought this original habeas corpus proceeding after a district judge held him in contempt for failing to obey a court order that directed him to produce certain documents. The contempt judgment ordered a three day confinement in the county jail and a fine of $500. After the initial three day period, Johnson's confinement was to continue until he produced the documents. Pursuant to TEX. GOV.'T CODE ANN. § 21.002(d) (Vernon Supp.1999),[1] the trial court released Johnson on his own recognizance pending a determination of guilt or innocence by a trial judge appointed by the presiding administrative judge of Jefferson County. After the specially-appointed judge found Johnson guilty of contempt for having violated the trial judge's order, Johnson filed his petition for writ of habeas corpus with this court.[2]

Decisions in contempt proceedings are not appealable. *Metzger v. Sebek*, 892 S.W.2d 20, 54 (Tex.App.—Houston [1st Dist.] 1994, writ denied). The validity

---

1. TEX. GOV'T CODE ANN. § 21.002(d) (Vernon Supp.1999) provides as follows:
    (d) An officer of a court who is held in contempt by a trial court shall, on proper motion filed in the offended court, be released on his own personal recognizance pending a determination of his guilt or innocence. The presiding judge of the administrative judicial region in which the alleged contempt occurred shall assign a judge who is subject to assignment by the presiding judge other than the judge of the offended court to determine the guilt or innocence of the officer of the court.

2. The function of a writ of habeas corpus is to secure release from unlawful custody. *In re Ragland*, 973 S.W.2d 769, 771 (Tex.App.—Tyler 1998, orig. proceeding). Restraint of liberty is normally a prerequisite of a habeas corpus proceeding. However, "[t]he Texas Supreme Court has held that when a contemnor is sentenced to jail and released on bond pending review by habeas corpus [as is true in the instant case] there is sufficient restraint of liberty to justify issuance of the writ of habeas corpus." *Id.*

of a contempt order can be attacked only by a writ of habeas corpus. *Id.* at 55. To obtain habeas corpus relief, Johnson must establish he is entitled to the writ.

> A court will issue a writ of habeas corpus if the order, judgment, or decree underlying the contempt is void, or if the contempt order itself is void. An order is void if: (1) it is beyond the power of the court to enter it; or (2) it deprives the relator of liberty without due process. (citations omitted)

*Ex parte Wagner,* 905 S.W.2d 799, 802 (Tex.App.—Houston [14th Dist.] 1995, orig. proceeding). In particular, due process requires that before a party may be held in contempt for disobeying a court order, the "order 'must spell out the terms of compliance in clear, specific and unambiguous terms.'" *Ex parte Price,* 741 S.W.2d 366, 367 (Tex.1987).

As part of the on-going litigation in a personal injury suit, a subpoena duces tecum was issued on behalf of defendant Williams Medic–Aid EMS ("Williams Medic–Aid").[3] The subpoena commanded the custodian of records for the Beaumont Police Department ("BPD") to produce certain documents and records on or before September 4, 1998. Prior to that date, the custodian of records, represented by counsel Dean Johnson, filed a motion to quash the subpoena. At the hearing on the motion to quash on September 9, 1998, the trial judge took the matter under advisement and suggested that BPD's counsel tender the records and documents for an in-camera inspection prior to his ruling. The trial judge specifically asked Johnson to advise him within three days as to whether the records would be submitted for the in-camera inspection. If the records were not submitted for such an inspection, the trial judge indicated he would

make a categorical ruling sometime within the next two weeks. No ruling was made at the hearing on the motion to quash the subpoena, and the documents were never produced.[4] Without further hearing, the trial judge on October 13, 1998, signed an order directing the Beaumont Police Department to produce certain documents and records:

> It is, therefore, ORDERED, ADJUDGED and DECREED that the Beaumont Police Department produce all information gathered, compiled, or created by the Beaumont Police Department in the investigation of the accident which occurred on May 1, 1998 including measurements, drawings, sketches, preliminary reports, final reports, field notes, statements, photographs, videotapes and audio tapes.
>
> SIGNED this 13th day of October, 1998.

Some ten days later on October 23, 1998, a copy of the court's order was faxed to Johnson by Williams Medic–Aid.

Around November 12, 1998, Williams Medic–Aid filed a contempt motion, seeking to have Johnson held in contempt for failing to produce the documents specified in the order. At the contempt hearing, Johnson claimed he did not have possession of the records, because the file had been turned over to the district attorney's office. Similar evidence had been offered at the hearing on the motion to quash in September 1998 when Officer Melvin De-Vaugh testified he took the case to the intake attorney with the district attorney's office.

After hearing argument of counsel, the trial court found Johnson in contempt of court, sentenced him to three days in jail, imposed a $500 fine, and remanded him

---

3. The personal injury suit below is cause number A159370, styled *Barton v. Williams Medic–Aid EMS,* in the 58th District Court, Jefferson County, Texas.

4. In a subsequent hearing on the contempt issue, Johnson indicated he had informed the

judge's clerk within the time frame requested by the judge that no records would be produced, because the District Attorney's office had the file which was still "open and pending."

into the custody of the sheriff's department. In addition, the trial judge found that Johnson would remain in contempt of court until Johnson "delivered the documents in question." Shortly thereafter, upon motion by Johnson's attorney, the trial judge released Johnson "on his own recognizance, pending a determination of his guilt or innocence by an assigned judge" pursuant to TEX. GOV'T CODE ANN. § 21.002(d).

At the December 18, 1998, hearing conducted by the specially appointed judge, Johnson raised, among other issues, due process claims regarding the trial court's failure to advise him of his right to counsel and the lack of specificity of the underlying order. After taking judicial notice of the contents of the file and hearing the arguments of counsel, the appointed judge found Johnson guilty of violating the October 13, 1998, order.[5]

Johnson raises six issues in his petition for habeas corpus. In issue numbers three and four, he contends the October 13, 1998, order (on which the judgment of contempt is based) was not sufficiently specific to support a judgment of either criminal or civil contempt.

■ Broadly defined, contempt of court is disobedience of a court by an action in opposition to its authority. *Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex. 1995). There are two basic types of contempt: direct contempt and constructive contempt. Direct contempt involves disobedience or disrespect which occurs within the presence of the court, while constructive contempt occurs outside the court's presence. *Id.* The alleged contempt in this case, violation of a court order, is constructive contempt.

■ Contempt is further distinguished by the type of punishment meted out by the trial court. Criminal contempt has the purpose of punishing the contemnor for some past conduct or disobedience to a court order that constitutes an affront to the dignity and authority of the court. *Ex parte Hawkins*, 885 S.W.2d 586, 588 (Tex.App.—El Paso 1994, orig. proceeding). In contrast, the purpose of civil contempt is to persuade or coerce the contemnor to obey an order of the court. *Id.* The confinement for civil contempt is conditional upon obedience, and, therefore, the civil contemnor carries the keys of his prison in his own pocket. *Id.* In the instant case, the contempt judgment is a hybrid one, because it contains both a finding of civil and criminal contempt. *See Ex parte Busby*, 921 S.W.2d 389, 391 (Tex.App.—Austin 1996, pet. ref'd). By ordering a three day incarceration for Johnson's past conduct, the judgment is one for criminal contempt. By conditioning Johnson's release after the service of the three day sentence upon compliance with the October 13 order, the contempt holding is coercive and constitutes a civil contempt.

■ A contempt order is insufficient to support a judgment of contempt only if its interpretation requires inferences or conclusions about which reasonable persons might differ. *Ex parte Durham*, 921 S.W.2d 482, 486 (Tex.App.—Corpus Christi 1996, orig. proceeding). Those found guilty of civil contempt "should be able to look in the record and find some written order [i.e., a contempt judgment] spelling out exactly what duties and obligations are imposed on them." *Id.* That same principle applies to the underlying order as well. *See id.* Likewise, a criminal contempt must also be based

---

5. In their brief on appeal, Williams Medic–Aid directs us to the record of the hearing conducted by the appointed judge wherein he indicated his belief that his role was to consider the criminal contempt matter only. However, his order makes no distinction between civil and criminal contempt; the order simply finds Johnson guilty. Consequently, our review encompasses both. In addition to finding Johnson guilty, the appointed judge also remanded the case back to the trial judge for consideration of the "challenges to the underlying Order and proceeding." There is nothing in the record to indicate any further action was taken on the matter.

on a reasonably specific order. *See Chambers*, 898 S.W.2d at 259. Therefore, to support a judgment of contempt, whether it be civil or criminal, Texas law requires that the underlying decree set forth the terms of compliance in clear, specific, and unambiguous terms so that the person charged with obeying the decree will readily know exactly what duties and obligations are imposed on him. *Id.* at 260; *see also Ex parte Acker*, 949 S.W.2d 314, 317 (Tex.1997).

In *Acker*, a divorce decree, signed November 15, 1990, required Mary Ann Acker to make insurance payments of $50 per month "beginning on the 1st day of June and $50.00 per month on the 1st day of each and every month thereafter." *Acker*, 949 S.W.2d at 316. The trial court heard the divorce case in May 1990, some six months before the decree was signed. Although the decree itself specifies June 1 as the beginning date of the payments, it does not specify a year. The trial court found Mary Ann in contempt for failing to make the monthly payment in December 1990 (the month following entry of the decree) and in each month thereafter. Mary Ann contended the decree was not sufficiently specific and too ambiguous to be enforced, since it did not specify the year. Following similar pronouncements in earlier cases,[6] the Texas Supreme Court stated the "interpretation of the decree 'should not rest upon implication or conjecture.'" *Id.* at 317. The court concluded that "while one may infer that the 'June' commencement date for the insurance payments was intended to be June 1990," "there is simply no way to determine with sufficient certainty what year the insurance obligation began." *Id.*

■ A similar analysis is proper in the instant case. The underlying order of October 13, 1998, does not set forth the terms of compliance in clear, specific, and unambiguous terms. It does not specify the date on which the requested documents were to be produced.[7] Giving no date whatsoever, the order is completely open-ended. Williams Medic–Aid simply argues the documents were to be produced within a "reasonable time" after October 13, 1998. What is meant by "reasonable time," of course, is unknown, completely subjective, and open to interpretation. The order is not specific.

Moreover, during the hearing on the motion to quash, which was held prior to issuance of the October 13 order, the judge made the following remarks:

> Mr. Johnson, I have your motion to quash. I have read it. I understand first that you complain about the length of time. I will grant your motion to quash insofar as it seeks the production of those records and documents on or before September the 4th, which is obviously antecedent to now, [September 9, 1998] and I will allow you a *reasonable time, pending a determination of the other issues in this case.* So, the time issue will not be something that you need to address. (emphasis added)

At the conclusion of the hearing, the trial judge further stated as follows:

> And I understand ... the sensitivity. And don't let me be misunderstood. I'm very much appreciative of the position that the police department and the district attorney's office are in the matter of an open criminal investigation. All I can say is *it may be preferable for all of us to wait and see if Mr. Lewis can report to the police department that he submitted it to the Grand Jury and the Grand Jury has taken whatever action it takes and the matter is either open or*

---

**6.** See also *Ex parte Blasingame*, 748 S.W.2d 444, 446 (Tex.1988); *Ex parte Slavin*, 412 S.W.2d 43 (Tex.1967).

**7.** The October 13 order directs the custodian of records of the Beaumont Police Department to produce the records in question. It does not specifically name Dean Johnson. Although Johnson claims such an omission renders the order uncertain, vague, and ambiguous as to any duty he might have under the order, we do not address that issue here.

*closed, ... and then we can be governed by that.* (emphasis added).

No deadline is given in either the hearing on the motion to quash or in the October 13 order. To the contrary, inferences can be made, based on what took place during the hearing and the lack of any date in the order, that the deadline would be impacted by the grand jury's action on some related matter.

The record contains no further orders compelling production of the documents. We conclude, therefore, the underlying order does not ." 'set forth the terms of compliance in clear, specific, and unambiguous terms so that the person charged with obeying the decree will readily know exactly what duties and obligations are imposed on him.'" *Acker,* 949 S.W.2d at 317. The October 13, 1998, order is too vague to be enforced by civil or criminal contempt and does not afford Johnson his due process rights. Consequently, the judgment of contempt is void. Since we find the underlying order is unenforceable and the contempt judgment void, it is unnecessary to address Johnson's remaining issues. We, therefore, grant Johnson's petition for writ of habeas corpus, and order him released from the order holding him in contempt and from his bond.

PETITION FOR HABEAS CORPUS GRANTED.

WALKER, C.J., and BURGESS, J., concur.

BURGESS, Justice, concurring.

I concur in the resolution of the case. Relator is being released from the order holding him in contempt, not because his conduct was not contemptuous,[1] but because the underlying order is unconstitutionally vague. I have no quarrel with this holding, albeit a technical one.[2] I wholeheartedly concur.

WALKER, Chief Justice, concurring.

I concur with Justice Stover's opinion granting habeas corpus relief. I also concur with Justice Burgess's concurring opinion. I write this additional concurrence in hopes of highlighting certain matters of concern.

The record clearly reveals Mr. Dean Johnson's contemptuous conduct toward the trial court's production order. "Contempt of Court" is defined as:

Any act which is calculated to embarrass, hinder, or obstruct court in administration of justice, or which is calculated to lessen its authority or its dignity. Committed by a person who does any act in willful contravention of its authority or dignity, or tending to impede or frustrate the administration of justice, or by one who, being under the court's authority as a party to a proceeding therein, willfully disobeys its lawful orders or fails to comply with an undertaking which he has given.

BLACK'S LAW DICTIONARY 319 (6th ed.1990).

Mr. Johnson, Relator, escapes the legal ramifications of such conduct by what Justice Burgess refers to as a "technicality."

Although this "technicality" is a free pass to Mr. Johnson's incarceration, it does not excuse his contempt of and for the legal process.

The Texas Disciplinary Rules of Professional Conduct provides in part:

## PREAMBLE: A LAWYER'S RESPONSIBILITIES

1. A lawyer is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice. Lawyers, as guardians of the law, play a

---

1. Basic logic tells us, the relator's conduct was contemptuous; the judge ordered the documents produced and they were not.

2. The irony should not be lost that this constitutional "technicality" is being used to release a member of law enforcement from custody.

vital role in the preservation of society. The fulfillment of this role requires an understanding by lawyers of their relationship with and function in our legal system. A consequent obligation of lawyers is to maintain the highest standards of ethical conduct.

. . . .

4. A lawyer's conduct should conform to the requirements of the law, both in professional service to clients and in the lawyer's business and personal affairs. A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others. A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials. While it is a lawyer's duty, when necessary, to challenge the rectitude of official action, it is also a lawyer's duty to uphold legal process.

*See* TEX. DISCIPLINARY R. PROF'L CONDUCT Preamble, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 1998) (TEX. STATE BAR R. art. X § 9).

The rule of law must stand even though the guilty may escape due punishment. Therefore, I concur that Mr. Johnson be released from the trial court's order of contempt.