**Writ Granted and Opinion Filed March 21, 2022**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-20-01068-CV

## IN RE LA'KEISHA T. HILBURN, Relator

**Original Proceeding from the 256th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-11-12951**

## MEMORANDUM OPINION

Before Justices Schenck, Partida-Kipness, and Nowell
Opinion by Justice Partida-Kipness

In this original proceeding, relator La'Keisha T. Hilburn seeks habeas relief from orders finding her in contempt and ordering her confined for violating certain possession provisions of a 2012 Order in Suit Affecting the Parent-Child Relationship. We granted Hilburn's request for temporary relief and ordered her released from custody if she posted a good and sufficient cash or surety bond in the sum of $500. Hilburn thereafter filed a "Second Amended Petition for Writ of Habeas Corpus." We requested a response to the second amended petition. No response was filed. After reviewing the second amended petition and the record, we conclude Hilburn is entitled to the relief requested, and we grant the writ of habeas corpus.

## BACKGROUND

Hilburn shares custody of her son with Jared Daniel Harvey, the child's father. On August 1, 2012, the trial court signed the Order in Suit Affecting the Parent-Child Relationship (2012 Order), under which Hilburn and Harvey were appointed joint managing conservators of their son. The 2012 Order designated Hilburn as the parent with the right to designate the child's primary residence. The 2012 Order included the Standard Possession Order. At issue in this case is the interpretation and application of the terms of Harvey's weekend and Thursday night possession periods during the school year when the child attends school virtually due to the COVID-19 pandemic.

The 2012 Order provides Harvey weekend possession of the child "during the regular school term"[1] three weekends a month. Weekend possession begins "at the time the child's school is regularly dismissed" on designated Fridays and ends "at the time the child's school resumes after the weekend."[2] The 2012 Order further provides Harvey with Thursday-night possession of the child "during the regular school term," from the time school is regularly dismissed on Thursday to the time

---

[1] Hilburn's alleged violations occurred on dates in which the child's school was in session. They, therefore, occurred "during the regular school term" as set out in the 2012 Order.

[2] The 2012 Order specifically provides:

"On weekends that occur during the regular school term, beginning at the time the child's school is regularly dismissed, on the first, third, and fifth Friday of each month and ending at the time the child's school resumes after the weekend.

On weekends that do not occur during the regular school term, beginning at 6:00 p.m., on the first, third, and fifth Friday of each month and ending at 6:00 p.m. on the following Sunday."

school resumes on Friday.[3] When a possession period "begins at the time the child's school is regularly dismissed," the 2012 Order provides that Hilburn is to surrender the child to Harvey "at the beginning of each such period of possession at the school in which the child is enrolled." If a possession period occurs when "the child is not in school," the 2012 Order provides that Hilburn is to surrender the child at 6:00 p.m. "at the residence of" Hilburn.[4]

The 2012 Order defines "school" as "the primary or secondary school in which the child is enrolled or, if the child is not enrolled in a primary or secondary school, the public school district in which the child primarily resides." The 2012 Order provided that Hilburn's residence address was on Oak Meadows Drive in Dallas, Texas. That address is also the address of Hilburn's father. Although Hilburn owns a home in Wilmer, Texas, she continued to use her father's address on Oak Meadows Drive as her residential address for purposes of the 2012 Order and court filings.

---

[3] Paragraph three of the 2012 Order provides: "On Thursday of each week during the regular school term, beginning at the time the child's school is regularly dismissed and ending at the time the child's school resumes on Friday."

[4] The 2012 Order includes these provisions concerning Hilburn's surrender of the child to Harvey:

1. Surrender of Child by LaKeisha T. Hilburn - LaKeisha T. Hilburn is ORDERED to surrender the child to Jared Daniel Harvey, Sr. at the beginning of each period of Jared Daniel Harvey, Sr.'s possession at the residence of LaKeisha T. Hilburn.

If a period of possession by Jared Daniel Harvey, Sr. begins at the time the child's school is regularly dismissed, LaKeisha T. Hilburn is ORDERED to surrender the child to Jared Daniel Harvey, Sr. at the beginning of each such period of possession at the school in which the child is enrolled. If the child is not in school, Jared Daniel Harvey, Sr. shall pick up the child at the residence of LaKeisha T. Hilburn at 6:00 p.m., and LaKeisha T. Hilburn is ORDERED to surrender the child to Jared Daniel Harvey, Sr. at the residence of LaKeisha T. Hilburn at 6:00 p.m. under these circumstances.

Hilburn and Harvey appear to have operated under the possession schedule without need for court intervention for nearly eight years. That changed in 2020 when schools moved to virtual learning because of the COVID-19 pandemic. At first, Hilburn and Harvey operated amicably despite the pandemic. For example, Harvey agreed to pick up the child at the maternal grandmother's house where he engaged in virtual school rather than at the school building or Hilburn's residence. But when school began again in August 2020, Harvey refused to pick up the child where he was engaging in virtual school. Hilburn enrolled the child in the virtual learning option for the start of the 2020-2021 school year and scheduled the child to participate in virtual school from her father's home on Oak Meadows Drive, which is the same address designated as Hilburn's residential address in the 2012 Order. Events during the 2020-2021 school year form the basis of the underlying orders.

## I. Harvey refuses to pick the child up at the location of virtual learning

School began on August 6, 2020. Hilburn e-mailed Harvey to provide information concerning the child's remote learning for school. She informed Harvey that the child would be participating in the school's distance learning from her father's house, provided her father's address, and stated that Harvey "may pick him up from this address 'when school is dismissed,' and return him to this address 'when school resumes' after your period of possession." Hilburn also provided Harvey with information about the school's remote learning platform. She reminded Harvey that she had already forwarded the information for the school's Virtual Meet the Teacher

and stated she hoped he was able to attend one of the sessions so he could have an "understanding of what remote learning will look like." Hilburn also explained that the school was using the distance learning platform Class Dojo and asked if he was connected with the child's teachers on that platform.

Harvey did not respond to Hilburn's inquiry concerning his understanding of the distance learning platform. He did, however, state that "per the agreement" he would be picking up the child from Hilburn's residence at 6:00 p.m. and returning the child to Hilburn's residence on Sunday at 6:00 p.m. Hilburn asked Harvey to "please adjust" to the remote-learning situation and pick the child up at the address she provided, which was where the child was doing his remote learning:



Thu, Aug 6, 2020 at 1:22 PM

Jared,

You are referencing an agreement for if our child is not enrolled in school. Our son is enrolled in school, however, the school is temporarily closed due to the COVID-19 pandemic. Our custody order does not directly address this unique circumstance, but it is reasonable to assume that the location in which he is doing his distance learning can serve as "school" for the purpose of following the order.

Our son will not be at my residence alone while I am at work, so please adjust accordingly. He is distance learning at ▮▮▮▮. You may pick him up from this address at the time that "school is dismissed" and return him to this address "when school resumes" after your period of possession.

Best regards,
La'Keisha

Sent from my iPhone

Harvey responded that he would "follow the Court ordered agreement," which "only list[s] two places for me to pick up our son. That's the school if it is in session or your residence." Rather than pick the child up where he was engaging in virtual school at the time of dismissal, however, Harvey attempted to pick up the child at 6:00 p.m. at a home owned by Hilburn in Wilmer, Texas. Hilburn had not provided

that address to Harvey. He found the address by searching the on-line database of Dallas County tax records.[5] Then, on August 7, Harvey attempted to pick up the child at Hilburn's grandmother's home, rather than where he was engaging in virtual school.

Harvey took similar actions the following week. An e-mail string on August 13, 2020, shows Harvey again refused to pick up the child at the location in which the child was attending virtual school. He first insisted on picking up the child at 6:00 p.m. at Hilburn's residence. But he then changed tack and decided to drive to the child's school building at 3:45 p.m. for pick–up. Harvey went to the school even though the school was closed and the child was attending school virtually from the child's grandfather's home:

---

[5] Hilburn testified that she owns three homes and, at the time of the contempt hearing, lived with the child at the residence in Wilmer, Texas that Harvey found by searching tax records. Hilburn insisted that her official residence is the address in the 2012 Order and is the address she gave to Harvey for where to pick up the child. But Harvey refused to go to that address.

## Thursday Pickup August 13 - ███████

6 messages

Thu, Aug 13, 2020 at 7:25 AM

La'Keisha,

Good Day!

I can you tell me where ███ will be distance learning today? I would like to ensure I am at the correct location and arrive at the correct time to pick up ███ today.

Thank you,
Jared

Thu, Aug 13, 2020 at 11:06 AM

Jared,

███ will be available for pick up at ████████████████████████████ at 4:00 pm, as that is when his asynchronous learning schedule ends.

Best regards,
La'Keisha

Sent from my iPhone

[Quoted text hidden]

Thu, Aug 13, 2020 at 11:11 AM

La'Keisha,

Ok, I will be at your residence at 6 pm today as per the court ordered agreement.

Sincerely,
Jared
[Quoted text hidden]

Thu, Aug 13, 2020 at 3:41 PM

Jared,

Per the court ordered agreement, you have Thursday possession "on Thursday of each week during the regular school term, beginning at the time the child's school is regularly dismissed and ending at the time the child's school resumes on Friday."

Our son will be made available to you for pick up on Thursdays @ 4:00 pm.



Best Regards,
La'Keisha

Sent from my iPhone
[Quoted text hidden]

Thu, Aug 13, 2020 at 3:51 PM

The court order states that when school is in session you are to surrender ███ at the school in which he is enrolled in.

He's is enrolled at
I arrived here at 3:45, he's not here currently. I will try again at your residence at 6 pm if I am unable to pick him up here.

Best,
Jared
[Quoted text hidden]

Thu, Aug 13, 2020 at 4:24 PM

Jared,

It was foolish of you to drive to the school in an effort to pick our child up from there when you are fully aware that the school is closed and our son is distance learning at the address I provided to you.

When the school first closed last spring, you continued to pick him up from my residence at the time that school was dismissed, not at 6:00 pm, and that is what we will continue to do. You may pick him up from ████████████████ ████████ at the time that school is dismissed, and return him to that address at the time that school resumes.

Please stop being intentionally difficult, and help me to provide consistency for our child during this uncertain time.

Best regards,
La'Keisha

Sent from my iPhone

On Thursday, September 3, 2020, Friday, September 4, 2020, and Thursday, September 10, 2020, Harvey again drove to the child's school building for pick–up at 4:00 p.m. even though he knew his child was not there. He told the trial court that he chose that option on advice of counsel. On those dates he also went to Hilburn's residence in Wilmer, Texas, at 6:00 p.m. "to make sure that [he] had all bases covered in the order." The child transferred to a new elementary school on September 14, 2020, and he continued to attend school virtually at his grandfather's house.

## II.    The enforcement action and contempt order

On July 30, 2020, Harvey filed a Motion for Enforcement of Possession or Access, which he then amended twice. On September 17, 2020, the trial court held

a hearing on Harvey's August 17, 2020 Second Amended Motion for Enforcement of Possession or Access (the enforcement motion). In the enforcement motion, Harvey alleged Hilburn violated the 2012 Order on twenty-five occasions between January 17, 2020, and September 10, 2020. After hearing testimony from Harvey, Harvey's counsel, and Hilburn, the trial court signed a contempt order in which it found Hilburn failed to comply with the 2012 Order nine times between August 6, 2020, and September 10, 2020, by:

> Failing to surrender the child at 6:00 p.m. "at the child's residence" on Thursday, August 6, 2020, and Friday, August 7, 2020 (Violations 2 and 3);

> Failing to surrender the child "at the time the child's school is regularly dismissed at the child's school . . . and/or . . . at 6:00 p.m. at the child's residence" on August 13, 20, 21, 27, 2020, and September 3, 4, and 10, 2020 (Violations 4 through 10).[6]

The trial court found Hilburn had the ability to comply with the 2012 Order and found her in contempt for Violations 2 through 10. The trial court assessed fees and costs of $7,412.76 against Hilburn "as child support," and ordered Hilburn to pay those attorney's fees in monthly installments of $500 beginning October 1, 2020, until paid in full. The trial court further ordered Harvey be given make-up possession periods on the following six Wednesday overnight periods and the "next three second and fourth weekend periods of possession."

---

[6] The August 21, 2020, and September 4, 2020, violations occurred on Fridays. The others occurred on Thursdays.

In addition, the trial court held Hilburn in criminal contempt and civil contempt. As punishment for the criminal contempt, the trial court assessed a fine of $500 per violation and confinement in the county jail for a period of 179 days per confinement, with confinement periods to run concurrently. As punishment for the civil contempt, the trial court ordered further confinement "for a period not to exceed eighteen months including time served for criminal contempt" or until Hilburn allowed Harvey the additional make-up possession periods, paid the $7,412.76 in attorney's fees and costs, and paid $500 "taxed as a fine." The trial court suspended commitment for twenty-four months provided Hilburn allowed Harvey to have possession of the child during the make-up periods ordered, paid the attorney's fees ordered, and paid the $500 fine. Finally, the trial court set out the following "clarification" of the 2012 Order:

> This Court clarifies that if the child is attending school virtually due to the Coronavirus (COVID-19) pandemic on a date of [Harvey's] possession, [Harvey's] period of possession shall begin at the time the child's school is dismissed and [Harvey] shall pick up the child at [Hilburn's] residence at the beginning of [Harvey's] period of possession.

The contempt order did not specify which address the court considered to be the address of Hilburn's "residence."

After obtaining the contempt order, Harvey continued his refusal to pick-up and drop-off the child at the place of his remote learning, which was also Hilburn's residence under the 2012 Order. Instead, he insisted that drop-off and pick-up occur at Hilburn's house in Wilmer, Texas, regardless of whether Hilburn would be there

–10–

to receive the child or whether the child would be at that residence at the time for pick-up. The parties' e-mail exchanges on Wednesday, September 30, 2020, and Thursday, October 1, 2020, concerning Harvey's return of the child to Hilburn on October 1st illustrated this attitude. In those e-mails, Hilburn asked Harvey to "please return" the child to her father's house on Thursday morning "at the time that school resumes" and not to her Wilmer, Texas address because she would already be on the way to her place of employment at the drop-off time and would not be at the Wilmer, Texas address to receive the child.[7] Harvey disregarded Hilburn's request that he return the child to his remote learning location and, instead, drove the child to Hilburn's Wilmer, Texas address. When he found Hilburn was not at home, Harvey took the child back to his own residence. Harvey did the same on October 15, 2020, October 16, 2020, and October 18, 2020, despite Hilburn's explanations and pleas to drop the child off at her father's house. According to e-mails between Harvey and Hilburn, Harvey's actions caused the child to log in to school late on multiple days and miss instructional time.

## III. The motion to revoke suspension of commitment

Harvey filed a motion to revoke suspension of commitment on September 24, 2020. He alleged that Hilburn failed to comply with the enforcement order by failing to surrender the child on Wednesday, September 23, 2020, at 3:00 p.m. at the child's

---

[7] Hilburn is an educator and does not work at her child's current elementary school. She testified that she works from 7:30 a.m. to 4:30 p.m. Monday through Friday. Because of that schedule, she cannot be at the Wilmer, Texas home when the child's school begins or when it releases for the day.

residence. He further alleged that he "anticipates" that Hilburn would fail to surrender the child as ordered for the remaining Wednesday and weekend make-up dates.

Harvey filed his First Amended Motion to Revoke Suspension of Commitment on November 12, 2020. In that motion, Harvey alleged that Hilburn violated the enforcement order by (1) failing to surrender the child at 3:00 p.m. at the child's residence in Wilmer , Texas on four make-up possession dates and three standard possession dates, and (2) failing to make monthly attorney's fee payments of $500 on October 1, 2020, and November 1, 2020. The amended revocation motion acknowledges that Hilburn released the child to Harvey between 5:00 p.m. and 6:00 p.m. on five of the seven dates on which Harvey complained.

## IV. Hilburn's motion to set aside the enforcement order

Hilburn filed a motion to set aside the enforcement order and later amended that motion. Hilburn argued first that she had not violated the 2012 Order because she surrendered the child at the location where he was virtually attending school and at the time virtual school dismissed for the day. Hilburn also maintained that compliance with the 2012 Order was unclear and impossible because neither the 2012 Order nor the Texas Supreme Court's emergency orders addressed where to surrender the child when he was engaging in virtual school remotely and was not attending school in the school building. Hilburn also maintained that she could not comply with the contempt order because she could not leave work early to transport

the child to the physical school building or her Wilmer, Texas residence. She asked the trial court to vacate the contempt order, grant a new trial, and render a new order setting out a location for exchange of the child at a location where Hilburn can comply.

## V.     The revocation order

The trial court heard the parties' motions on December 4, 2020. After hearing the testimony of Harvey, his counsel, and Hilburn, the trial court found that Hilburn failed to comply with the terms and conditions of suspension set out in the enforcement order. Specifically, the trial court found that Hilburn failed to surrender the child "between 3:00 and 3:10 p.m. (which is the time the child's school is dismissed) at the child's residence" on September 18, 23, 24, 25, 30, October 28, and November 5. The trial court also found that Hilburn failed to make the October and November attorney's fee payments.

The trial court revoked the suspension of commitment and sentenced Hilburn to ten days in jail beginning December 7, 2020, at 9:00 a.m. The court further ordered that Hilburn's confinement continue until she pays the $1,500 in fees owed for October, November, and December. The court also awarded Harvey fees of $7,435 as additional child support. Hilburn was placed in custody on December 7, 2020. This original proceeding followed.

## STANDARD OF REVIEW

A commitment order may be collaterally attacked in an original habeas corpus proceeding. *In re Henry*, 154 S.W.3d 594, 596 (Tex. 2005) (orig. proceeding). The purpose of a writ of habeas corpus is not to determine the guilt of the contemnor, but only to determine whether the contemnor has been unlawfully confined. *Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex. 1979) (orig. proceeding). When a relator, after being sentenced to jail, is "released on bond pending review by habeas corpus, there is sufficient restraint of liberty to justify issuance of [a] writ of habeas corpus." *In re Vaughn*, No. 12-09-00143-CV, 2009 WL 3288301, at *2 (Tex. App.—Tyler Oct. 14, 2009, orig. proceeding) (mem. op.) (citing *Ex parte Williams*, 690 S.W.2d 243, 244 (Tex. 1985)); *see also Ex parte Brister*, 801 S.W.2d 833, 835 (Tex. 1990).

A court will issue a writ of habeas corpus if the order underlying the contempt is void, or if the contempt order itself is void. *In re Luther*, 620 S.W.3d 715, 721–22 (Tex. 2021) (orig. proceeding); *Ex parte Shaffer*, 649 S.W.2d 300, 301–02 (Tex. 1983) ("[O]ne may not be held guilty of contempt for refusing to obey a void order."). An order is void if it is beyond the power of the court to enter it, or if it deprives the relator of liberty without due process of law. *Ex parte Barnett*, 600 S.W.2d 252, 254 (Tex. 1980) (orig. proceeding); *In re Stein*, 331 S.W.3d 538, 540 (Tex. App.—Houston [14th Dist.] 2011, orig. proceeding) (per curiam). "Contempt of court is broadly defined as disobedience to or disrespect of a court by acting in opposition to its authority." *Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex. 1995).

–14–

"Contempt is strong medicine—the alleged contemnor's very liberty is often at stake—and so it should be used only as a last resort." *In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011) (quoting *Ex parte Pink*, 746 S.W.2d 758, 762 (Tex. Crim. App. 1988) (cleaned up)).

## ANALYSIS

Hilburn asserts that both the contempt order and revocation order are void. We agree and address each order below.

## I.    The Contempt Order

The trial court found Hilburn in contempt of the 2012 Order for failing to surrender the child to Harvey as follows:

> Failing to surrender the child ***"at 6:00 p.m. at the child's residence"*** on Thursday, August 6, 2020 and Friday, August 7, 2020 (Violations 2 and 3); and

> Failing to surrender the child ***"at the time the child's school is regularly dismissed at the child's school . . . and/or . . . at 6:00 p.m. at the child's residence"*** on August 13, 20, 21, 27, 2020, and September 3, 4, and 10, 2020 (Violations 4 through 10).

But the 2012 Order did not require Hilburn to surrender the child at "the child's residence." Rather, the 2012 Order required Hilburn to surrender the child at Hilburn's residence ("the residence of LaKeisha T. Hilburn"), which was designated in the 2012 Order as the Oak Meadows Drive address. The 2012 Order designates no address as "the child's residence." Because no underlying order required Hilburn to surrender the child at "the child's residence," Hilburn should not be the subject of contempt proceedings for failing to surrender the child at his residence. Thus, the

–15–

portions of the contempt order holding Hilburn in contempt for failing to surrender the child at "the child's residence" are void. *See In re Broussard*, 112 S.W.3d 827, 831 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding) (portion of contempt order holding relator in contempt for failing to make $300.00 payments on the 15th of the month was void because the underlying order did not require payments be made on the 15th of the month).

Further, the record established that Violations 2 through 10 occurred "during the regular school term" and school dismissed at 3:50 p.m. on those dates. Under the 2012 Order, Harvey's possession on those dates began "at the time the child's school is regularly dismissed," and required Hilburn to surrender possession of the child "at the beginning of each such period of possession at the school in which the child is enrolled," not at 6:00 p.m. Because no underlying order required Hilburn to surrender the child on those dates at 6:00 p.m., Hilburn should not be the subject of contempt proceedings for failing to surrender the child at 6:00 p.m. Thus, the portions of the contempt order holding Hilburn in contempt for failing to surrender the child at 6:00 p.m. are void. *See In re Broussard*, 112 S.W.3d at 831.

The portions of the contempt order holding Hilburn in contempt for failing to surrender the child at his school are also void because the provisions of the 2012 Order providing for a transfer of custody based on school attendance was rendered ambiguous by the COVID-19 pandemic and the resulting closure of schools and move to virtual learning. When Violations 2 through 10 occurred, the child's school

was closed to in-person instruction. The child, in turn, participated in virtual school from his grandfather's home, which was also the home designated as Hilburn's residence in the 2012 Order. While Hilburn contends the child's location for virtual school constitutes "the school in which the child is enrolled," Harvey insists the actual school building remains "the school in which the child is enrolled" for purposes of the possession schedule.

To support a judgment of contempt, whether it be civil or criminal, Texas law requires that the underlying decree set forth the terms of compliance in clear, specific, and unambiguous terms so that the person charged with obeying the decree will readily know exactly what duties and obligations are imposed on him. *In re Johnson*, 996 S.W.2d 430, 433–34 (Tex. App.—Beaumont 1999, orig. proceeding) (first citing *Ex parte Chambers*, 898 S.W.2d 257, 260 (Tex. 1995), and then citing *Ex parte Acker*, 949 S.W.2d 314, 317 (Tex. 1997)). A decree is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *In re C.H.C.*, 396 S.W.3d 33, 49 (Tex. App.—Dallas 2013, orig. proceeding) (first citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983), and then citing *United Protective Servs., Inc. v. W. Vill. Ltd. P'ship*, 180 S.W.3d 430, 432 (Tex. App.—Dallas 2005, no pet.)).

Here, the requirement that Hilburn surrender the child "at the school in which the child is enrolled" became reasonably susceptible to more than one meaning when the child's physical school closed, and the child moved to a virtual learning

–17–

environment at his grandfather's house. Although the child was enrolled at a public elementary school, he did not attend the physical school building nor was he enrolled in classes held at the school itself. Hilburn's view that the physical location where the child is engaging in school constitutes the place of enrollment is, thus, one reasonable interpretation of the terms of the 2012 Order as applied to a virtual learning environment. Harvey's view that school means the physical school building is also a reasonable interpretation of the plain language of the 2012 Order. His interpretation, however, disregards the realities of moving to virtual learning and the logistical difficulties that change places on a custodial parent who works outside of the home. Regardless, we conclude the move to virtual school caused by the COVID-19 pandemic created an ambiguity in the 2012 Order concerning where Hilburn was required to surrender the child to Harvey for his possession times during the school year. The COVID-19 pandemic and continuation of virtual school, therefore, rendered the terms of the 2012 Order setting out where to surrender possession too indefinite and not "certain enough to support a finding of contempt." *Luther*, 620 S.W.3d at 722 (quoting *Ex parte Hodges*, 625 S.W.2d 304, 306 (Tex. 1981)).

Harvey asked the trial court to take judicial notice of the Texas Supreme Court's emergency orders regarding the COVID-19 state of disaster when making its decision concerning the enforcement motion. The Twelfth Emergency Order Regarding COVID-19 State of Disaster provided in pertinent part:

–18–

6. In determining a person's right to possession of and access to a child under a court-ordered possession schedule in a Suit Affecting the Parent-Child Relationship, ***the existing trial court order shall control in all instances***. Possession of and access to a child shall not be affected by any shelter-in-place order or other order restricting movement issued by a governmental entity that arises from the pandemic. ***The original published school schedule shall also control, and possession and access shall not be affected by the school's closure that arises from the pandemic.*** Nothing herein prevents parties from altering a possession schedule by agreement if allowed by their court order(s), or courts from modifying their orders on an emergency basis or otherwise.

Twelfth Emergency Order Regarding COVID-19 State of Disaster, 629 S.W.3d 144, 145 (Tex. 2020) (emphasis added). The language from the Twelfth Emergency Order was then carried forward in all relevant emergency orders going forward (seventeenth, eighteenth, twenty-second, twenty-sixth, and twenty-ninth emergency orders). This is the formulation of the order in place when the violations took place.

Those emergency orders, however, provided no additional clarity regarding where Hilburn was required to transfer the child to Harvey when school was occurring virtually; the physical school building or the location of virtual learning. Rather, the applicable emergency orders simply confirm that parents and courts should continue to follow the possession schedules set out in the controlling SAPCR order in conjunction with the child's published school schedule regardless of any COVID-19 restrictions put in place by local, state, or national authorities. In other words, the pandemic may not prevent parents from seeing their children as scheduled in an applicable SAPCR order. The emergency orders, therefore, cover the *when* of possession and access by requiring that the schedules for possession and access set

out in the SAPCR order should continue to be followed. Those emergency orders say nothing regarding *where* possession should be transferred if the child is attending school virtually and the SAPCR order requires surrendering the child at his school. The emergency orders, thus, provide no clear, specific, and unambiguous guidance as to where Hilburn was required to transfer the child to Harvey when school was occurring virtually.

We conclude the underlying order, even when construed with the emergency orders, does not "set forth the terms of compliance in clear, specific, and unambiguous terms so that the person charged with obeying the decree will readily know exactly what duties and obligations are imposed on him." *See Acker*, 949 S.W.2d at 317. The change to virtual school caused the 2012 Order to become too vague to be enforced by civil or criminal contempt and does not afford Hilburn her due process rights. Indeed, in light of that ambiguity, there is an absence of proof that Hilburn violated the order and did so with willful intent. *See Luther*, 620 S.W.3d at 721.

Tellingly, the contempt order itself illustrates the ambiguity created when virtual school began. The contempt order describes the violations as either failing to deliver the child to Harvey at the time school was dismissed at the school "and/or" at 6:00 p.m. at the child's residence. That the trial court found it necessary to include an "and/or" for when the violation occurred shows it was not clear where the child was to be transferred during a period of virtual schooling. Moreover, the trial court

found it necessary to clarify what happens "if the child is attending school virtually due to the coronavirus (COVID-19) pandemic on a date of Movant's possession" and included a "clarification" in the contempt order. This alone acknowledges that the shift to virtual learning rendered the custody order ambiguous.

A trial court that holds a party in contempt for violating a void order necessarily abuses its discretion. *See In re Garza*, 126 S.W.3d 268, 272 (Tex. App.—San Antonio 2003, orig. proceeding) (citing *Ex parte Shaffer*, 649 S.W.2d 300, 301–02 (Tex. 1983)). Here, the trial court held Hilburn in contempt for violating a void order. As such, the trial court abused its discretion, and the contempt order must be vacated. Further, because we have found the order void, it will not support the award of attorney's fees or the imposition of fines. *See In re Corcoran*, 343 S.W.3d 268, 269 (Tex. App.—Houston [14th Dist.] 2011, orig. proceeding) (first citing *Ex parte Sealy*, 870 S.W.2d 663, 667 (Tex. App.—Houston [1st Dist.] 1994, orig. proceeding), and then citing *Keene Corp. v. Gardner*, 837 S.W.2d 224, 232 (Tex. App.—Dallas 1992, writ denied)). We, therefore, grant the writ of habeas corpus and vacate the contempt order.

## II. The Revocation Order

An order that is predicated on an erroneous or void order is also void. *See Ex parte Abell*, 613 S.W.2d 255, 257 (Tex. 1981) (contempt judgment predicated on the violation of an erroneous discovery order is void). "Any attorney's fees based upon a void order must also be void." *In re Harrison*, No. 14-15-00370-CV, 2015 WL

5935816, at *5 (Tex. App.—Houston [14th Dist.] Oct. 13, 2015, orig. proceeding) (mem. op.) (quoting *Ex parte Fernandez*, 645 S.W.2d 636, 639 (Tex. App.—El Paso 1983, no writ)); *In re McCray*, No. 05-13-01195-CV, 2013 WL 5969581, at *2 (Tex. App.—Dallas Nov. 7, 2013, orig. proceeding) (mem. op.) ("Because the commitment order must be set aside, the trial court's finding as to the attorney's fees in the amount of $10,500 is void.").

In the revocation order, the trial court found that Hilburn had failed to comply with the terms of the contempt order, revoked the suspension of commitment, ordered her committed to jail, and awarded Harvey additional attorney's fees. Because the revocation order is predicated on the void contempt order, it is also void and should be vacated. *In re Stein*, 331 S.W.3d 538, 540 (Tex. App.—Houston [14th Dis.] 2011, orig. proceeding) (per curiam) (a writ of habeas corpus will issue if the order underlying the contempt, or the contempt order itself, is void.). Indeed, because the contempt order is void, no enforceable order remains under which the trial court could revoke the suspension of commitment included in the contempt order. *See, e.g., Adams v. State*, No. 12-08-00331-CR, 2010 WL 1987516, at *1 (Tex. App.—Tyler May 19, 2010, no pet.) (mem. op., not designated for publication) ("If the trial court's order imposing community supervision was void, then the trial court would have no authority to revoke community supervision, since, with no order imposing community supervision (because it is a nullity), there is nothing to revoke.").

Because we conclude the 2012 Order was rendered void for ambiguity, and the contempt order and revocation order are void, it is unnecessary to address Hilburn's remaining issues. *See In re Johnson*, 996 S.W.2d 430, 435 (Tex. App.—Beaumont 1999, orig. proceeding).

## CONCLUSION

Because the enforcement order and the revocation order are void, we grant habeas corpus relief and vacate the September 18, 2020 "Order of Enforcement," December 4, 2020 "Order Revoking Suspension and for Commitment to County Jail," and December 7, 2020 "Amended Order Revoking Suspension and for Commitment to County Jail," signed by the 256th Judicial District Court of Dallas County, Texas, in cause number DF-11-12951. We order that relator La'Keisha T. Hilburn be unconditionally released and discharged from the custody of the Sheriff of Dallas County under the same orders. We further discharge the bond paid by relator in accordance with this Court's order of December 9, 2020.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

201068F.P05