

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00018-CV

———————————————

IN RE A.W., Relator

---

Original Proceeding
367th District Court of Denton County, Texas
Trial Court No. 2011-50489-367

---

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

## I. Introduction

The trial court held relator Father A.W. in contempt for six instances of not exchanging his son Andy[1] with real-party-in-interest Mother M.B. on the date and at the time and place specified in its March 2017 order. It ordered Father committed to the county jail for 100 days for each violation, ordered the commitments to run concurrently, but suspended the commitments and placed Father on non-reporting community supervision for 48 months. Father filed this petition for writ of mandamus challenging the contempt order.[2] We requested a response from Mother, but she declined to file one.

In Father's dispositive first issue, he contends that Mother's motion for enforcement by contempt did not comply with Section 157.002 of the Texas Family Code, which required Mother to specify "the date, place, and, if applicable, the time of each occasion" that Father failed to comply with the court-ordered terms for Andy's exchange. *See* Tex. Fam. Code Ann. § 157.002(c). We agree.

---

[1]We use a pseudonym for Father and Mother's child. *See* Tex. R. App. P. 9.8.

[2]Father initially filed an appeal but later dismissed it. *See In re A.W.*, 02-23-00354-CV, 2024 WL 368513 (Tex. App.—Fort Worth Feb. 1, 2024, no pet.) (per curiam) (mem. op.). Contempt orders are not appealable. *In re J.R.-H.*, No. 02-23-00019-CV, 2023 WL 2429797, at *1 (Tex. App.—Fort Worth Mar. 9, 2023, pet. denied) (per curiam) (mem. op.).

For exchange-of-possession purposes, including location, Mother relied on the trial court's 2012 parental-adjudication order and its March 2017 order modifying the parent–child relationship. But in August 2017, the parties entered a Rule 11 agreement that modified the exchange location, an agreement the trial court approved and made an order of the court. After the hearing on Mother's motion to enforce, the trial court found Father in contempt for six instances of noncompliance, all of which occurred during the period governed by the August 2017 Rule 11 agreement or the August 2017 order adopting the Rule 11 agreement. But Mother never alleged in her motion that Father had violated either the August 2017 Rule 11 agreement or the August 2017 order.

We hold that the contempt order is void because Mother did not give Father proper notice of the alleged contempt's location as required by Section 157.002(c), sustain Father's first issue, and conditionally grant Father's petition for writ of mandamus to instruct the trial court to vacate its contempt order.[3]

## II. Background

In 2012, the trial court adjudicated Father to be Andy's father and entered a standard possession order. Within this order, when Mother's possession period ended, she was to exchange Andy with Father at Mother's place of residence. And when Father's possession period ended, he was ordered to exchange Andy with Mother at

---

[3]Father had two other issues, but because we sustain Father's first issue, we need not address his remaining issues. *See* Tex. R. App. P. 47.1

either her residence or his residence, depending on a variable not relevant to this appeal.

In March 2017, on Mother's motion, the trial court signed an order modifying the parent–child relationship. That order modified the exchange location for both Father and Mother to the parking lot of The Colony Police Department. Significantly, the March 2017 order also allowed the parties to change the location, provided the change was in writing: "IT IS FURTHER ORDERED that any agreement as to a particular exchange location must be in writing."

A few months later, in August 2017, again on Mother's initiative, the parties entered a Rule 11 agreement changing the exchange location to the parking lot of the Lewisville Police Department. The trial court approved the Rule 11 agreement and made it the order of the court.[4]

Years later, in 2023, when Mother filed her motion for enforcement by contempt, she relied exclusively on the trial court's 2012 and March 2017 orders:

> 10. [Father] has failed to comply with the Prior Orders described above as follows:
>
> . . . .

---

[4]The dynamics between a Rule 11 agreement versus a court order making a Rule 11 agreement the order of the court are discussed later.

Violation 5. On Sunday, December 9, 2018, [Father] refused and failed to return the child at 6:00 p.m. as ordered, thereby violating the 2012 Order and the [March] 2017 Order.[5]

Violation 6. On Sunday, February 3, 2019, [Father] refused and failed to return the child at 6:00 p.m. as ordered, thereby violating the 2012 Order and the [March] 2017 Order.

. . . .

Violation 8. On Sunday, May 5, 2019, [Father] refused and failed to return the child at 6:00 p.m. as ordered, thereby violating the 2012 Order and the [March] 2017 Order.

Violation 9. At the end of [Father]'s summer possession of the child on July 27, 2019, he refused and failed to return the child at 6:00 p.m. as ordered thereby violating the 2012 Order and the [March] 2017 Order.

. . . .

Violation 13. On Sunday, August 23, 2020, [Father] refused and failed to return the child at 6:00 p.m. as ordered, thereby violating the 2012 Order and the [March] 2017 Order.

. . . .

Violation 16. On Sunday, August 22, 2021, [Father] refused and failed to return the child at 6:00 p.m. as ordered, thereby violating the 2012 Order and the [March] 2017 Order.

At the hearing on Mother's motion, before Mother testified, Father moved for a directed verdict because she had not pleaded "the date, the time, and the place of the alleged violations."[6] The trial court denied Father's motion.

---

[5]In her motion, Mother defined the "2017 Order" as the March 2017 order. We quote only the allegations for which the trial court found Father in contempt.

During Mother's testimony, she acknowledged that in late 2017, the exchange location had been changed in writing. She agreed that the March 2017 order had specified the exchange location as the parking lot of The Colony Police Department and that the location had been changed to the parking lot of the Lewisville Police Department.

After Mother's direct examination, Father renewed his objection—this time citing Section 157.002(c) specifically—and again requested a directed verdict. The trial court again overruled Father's objection.

After hearing the evidence, the trial court found that Father had violated its orders on six dates: December 9, 2018; February 3, 2019; May 5, 2019; July 27, 2019; August 23, 2020; and August 22, 2021. All six dates are after August 2017—the period governed by the Rule 11 agreement and the accompanying order.

The trial court's contempt order relies strictly on the 2012 order and the March 2017 order. The order never mentions the August 2017 Rule 11 agreement or the court's August 2017 order making the Rule 11 agreement the order of the court.

Father filed a motion for rehearing and reconsideration or, alternatively, motion for new trial. Relying on Section 157.002(c), Father pointed out specifically that the August 2017 Rule 11 agreement modified the court's March 2017 order by

---

[6]"[A] motion for directed verdict applies to jury trials; when a party moves for a 'directed verdict' in a bench trial, it is construed as a motion for judgment." *Zuniga v. Amistad Motors*, 677 S.W.3d 149, 151 (Tex. App.—El Paso 2023, no pet.).

changing the exchange location from the parking lot of The Colony Police Department to the parking lot of the Lewisville Police Department.

Father also filed a request for findings of fact and conclusions of law, which the trial court entered. One finding was that "Mother's Motion included the portions of the 2012 Order and the [March] 2017 Order that were violated" and thus that "Mother's Motion stated the date, place, and time and manner of each occurrence of Father's noncompliance."[7] In the trial court's findings of fact and conclusions of law, it never mentioned the August 2017 Rule 11 agreement or its August 2017 order.

At the hearing on Father's postjudgment motions, which occurred after the trial court had entered its findings and conclusions, the trial court questioned the validity of the August 2017 Rule 11 agreement and the accompanying order because there had been no accompanying motion to modify the parent–child relationship. Father maintained that the August 2017 Rule 11 agreement was valid because the March 2017 order specified that the exchange location could be modified in writing. Father further represented that the parties had been operating under the Rule 11 agreement since 2017. The trial court denied Father's postjudgment motions.

### III. Standard of Review

Contempt orders not involving confinement are reviewable by writ of mandamus. *In re Mittelsted*, 661 S.W.3d 639, 647 (Tex. App.—Houston [14th Dist.]

---

[7]The trial court specified that the "2017 Order" referred to the March 2017 order.

2023, orig. proceeding). To be entitled to mandamus relief, a relator must show that the trial court abused its discretion and that the relator has no adequate remedy by appeal. *Id.* Because a contempt order is not reviewable by direct appeal, the second prong of mandamus review is satisfied. *Id.* at 647–48. The focus is thus on whether the trial court abused its discretion. A trial court abuses its discretion if its decision is so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law or, alternatively, if it clearly fails to correctly analyze the law or incorrectly applies the law to the facts. *Id.* at 647.

## IV. Discussion

### A. Contempt of Court

Contempt proceedings are quasi-criminal in nature; throughout the proceedings, the accused is entitled to procedural due process. *In re Roisman*, 651 S.W.3d 419, 434 (Tex. App.—Houston [1st Dist.] 2022, orig. proceeding). Contempt occurring outside of the court's presence, as alleged here, is constructive contempt. *Id.* (citing *In re Reece*, 341 S.W.3d 360, 365 (Tex. 2011) (orig. proceeding)).

#### 1. Notice

Before a court can punish an accused for constructive contempt, due process requires that the accused have full and complete notification of the contemptuous act. *Ex parte Carney*, 903 S.W.2d 345, 346 (Tex. 1995) (orig. proceeding); *Roisman*, 651 S.W.3d at 434. More precisely, the show-cause order or other means of notification must state when, how, and by what means the accused has been guilty of

8

the alleged contempt. *Roisman*, 651 S.W.3d at 434–35; *In re Parks*, 264 S.W.3d 59, 62 (Tex. App.—Houston [1st Dist.] 2007, orig. proceeding). To assure full and complete notification, Section 157.002 of the Texas Family Code sets out what an enforcement motion must specifically plead. Tex. Fam. Code Ann. § 157.002; *Roisman*, 651 S.W.3d at 435.

### 2. Relator's Burden

In an original proceeding challenging a contempt order, the relator must show that the order is void. *Roisman*, 651 S.W.3d at 435. Absent adequate notice, a contempt order is void. *See Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex. 1979) (orig. proceeding) ("A contempt judgment rendered without . . . notification is a nullity."); *Roisman*, 651 S.W.3d at 435.

### 3. Requirements of Order Being Enforced

To support a contempt order based on a violation of a decree, Texas law requires that the underlying order set out in clear, specific, and unambiguous language the terms of compliance so that the person charged with obeying the decree will readily know exactly what his duties and obligations are. *Ex parte Acker*, 949 S.W.2d 314, 317 (Tex. 1997) (orig. proceeding); *Ex parte Chambers*, 898 S.W.2d 257, 260 (Tex. 1995) (orig. proceeding); *In re Hilburn*, No. 05-20-01068-CV, 2022 WL 831547, at *7 (Tex. App.—Dallas Mar. 21, 2022, orig. proceeding) (mem. op.); *In re Johnson*, 996 S.W.2d 430, 434 (Tex. App.—Beaumont 1999, orig. proceeding). A decree is ambiguous when its meaning is uncertain or reasonably susceptible to more than one

interpretation. *In re Hilburn*, 2022 WL 831547, at \*7; *see In re Davenport*, 522 S.W.3d 452, 456 (Tex. 2017) (orig. proceeding); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *In re C.H.C.*, 396 S.W.3d 33, 49 (Tex. App.—Dallas 2013, no pet.); *United Protective Servs., Inc. v. W. Vill. Ltd. P'ship*, 180 S.W.3d 430, 432 (Tex. App.—Dallas 2005, no pet.).

## B. Rule 11 Agreements

Here, Mother and Father entered into a Rule 11 agreement, and the trial court later made the Rule 11 agreement the order of the court. Both the Rule 11 agreement and the order adopting the Rule 11 agreement add variables to the analysis.

Courts consider Rule 11 agreements as contractual in nature. *Tomorrow Telecom, Inc. v. Silvas*, No. 07-20-00100-CV, 2021 WL 2461129, at \*2 (Tex. App.—Amarillo June 16, 2021, no pet.) (mem. op.) (citing *Coale v. Scott*, 331 S.W.3d 829, 832 (Tex. App.—Amarillo 2011, no pet.)). Rule 11 agreements, not being orders, are not enforceable by contempt, *Coronado v. Jones*, No. 03-13-00464-CV, 2015 WL 2183459, at \*2 n.2 (Tex. App.—Austin May 6, 2015, orig. proceeding) (mem. op.), just as contractual obligations cannot be enforced by contempt, *In re Coppock*, 277 S.W.3d 417, 420 (Tex. 2009) (orig. proceeding).

Agreements incorporated into orders are enforced only as contractual obligations absent decretal language making it clear that a party is under order. *Coppock*, 277 S.W.3d at 420; *McGoodwin v. McGoodwin*, 671 S.W.2d 880, 882 (Tex.1984) (op. on reh'g).

## C. Application

The March 2017 order expressly allowed the parties to modify the exchange location provided the parties reduced the agreement to writing. The parties did that with their August 2017 Rule 11 agreement. The Rule 11 agreement thus governed the exchange location. The fact that it could not be enforced by contempt is a separate issue.

The trial court, going one step further, approved the Rule 11 agreement and made it the court's order and thus potentially enforceable by contempt, although Mother's pleadings suggest that it was not. Then again, the facts that she developed at the contempt hearing suggested that it was.[8] Without briefing from Mother, we do not know how she reconciled this inconsistency.

Regardless of Mother's and the trial court's reasoning, Section 157.002(c) required Mother to specify the place at which the alleged infractions occurred. *See* Tex. Fam. Code Ann. § 157.002(c). In this case, the infractions could have occurred at one of two locations: (1) the parking lot of The Colony Police Department if the March 2017 order was the controlling document—which Mother's motion and the trial court's order appear to assert—or (2) the parking lot of the Lewisville Police

---

[8]For unclear reasons, both Mother and the trial court ignored the August 2017 order. One possibility is that they concluded that the order lacked decretal language making it clear that the adopted agreement was enforceable by contempt. Another possibility is that they were concerned that the order might have been void because it was not supported by a motion to modify.

Department if the August 2017 Rule 11 agreement or the August 2017 order adopting the Rule 11 agreement controlled the exchange location—something that Mother's motion and the trial court's contempt order never address.[9] Simply referring to the 2012 and the March 2017 orders does nothing to resolve this ambiguity. Similarly, ignoring the August 2017 Rule 11 agreement and the August 2017 order adopting the Rule 11 agreement—when Mother's testimony showed that the exchange location had changed—does not resolve the ambiguity. If anything, it accentuates it.

Mother's motion for enforcement relied on the March 2017 order. But Mother's evidence relied on either the August 2017 Rule 11 agreement or the August 2017 order. In her motion, Mother specified the wrong location. Father's complaint both at trial and in this mandamus proceeding was that Mother's motion did not comply with Section 157.002(c). *See* Tex. Fam. Code Ann. § 157.002(c); *Roisman*, 651 S.W.3d at 435. We agree.

A contempt order rendered without adequate notice is void. *Id.* Father is thus entitled to relief. *See Hilburn*, 2022 WL 831547, at *5; *In re Koomar*, No. 09-20-00114-CV, 2020 WL 5805571, at *3 (Tex. App.—Beaumont Sept. 30, 2020, orig. proceeding) (per curiam) (mem. op.). We sustain Father's first issue.

---

[9]In Mother's motion, she alleged 20 exchange violations starting in September 2017 and ending in April 2023. Thus, all 20 alleged violations were governed by the August 2017 Rule 11 agreement or the August 2017 order adopting the Rule 11 agreement.

## VI.  Conclusion

Having sustained Father's first issue, we direct the trial court to vacate its contempt order. A writ of mandamus shall issue only in the event the trial court fails to comply.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered:  February 27, 2024