

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-23-00097-CV
_____

IN THE INTEREST OF L.D.W., K.A.W., AND K.L.C., CHILDREN

On Appeal from the 6th District Court
Red River County, Texas
Trial Court No. CV05346

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

On the petition of the Texas Department of Family and Protective Services, the trial court terminated the parental rights of Mother to her children, L.D.W., K.A.W., and K.L.C.,[1] based on statutory grounds O and P and its finding that termination was in the best interests of the children.[2]  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O), (P), (2) (Supp.).  The trial court also terminated the parental rights of Father to his children, K.A.W. and K.L.C., based on statutory grounds P and Q and its finding that termination was in the best interests of the children.  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(P), (Q), (2) (Supp.).  Mother and Father appeal the termination of their parental rights and assert that the evidence was legally and factually insufficient to support the findings of the statutory grounds of termination.  Because the evidence was legally insufficient to support the termination of Mother's rights under statutory grounds O and P, we reverse the trial court's judgment in part, and we render judgment vacating those portions of the trial court's order of termination relating to the termination of Mother's parental rights.  Because legally and factually sufficient evidence supports termination of Father's parental rights under statutory ground Q, we affirm the remainder of the trial court's judgment.

I.    **Background**

The Department removed the children from Mother's care in May 2022, when they were found living in a U-Haul van with Mother and her partner and Mother admitted to recently testing positive for methamphetamine.  The children were placed in Father's care while the

---

[1]In order to protect the privacy of the children, we refer to them by their initials and refer to their biological parents as Mother and Father.  *See* TEX. R. APP. P. 9.8(b)(2).

[2]The parental rights of the alleged father of L.D.W. were also terminated, but he does not appeal.

2

Department investigated the children's safety. During the investigation, the Department had difficulty contacting Father regularly, and Father gave misleading information regarding the care of the children.

On September 6, 2022, Father left L.D.W. in the care of the child's adult sibling while he went to work, even though he had been instructed not to leave them with her because of her use of illegal drugs. A few hours later, L.D.W., who was five years old at the time, was found walking alone along Highway 37. When Father was interviewed later that day, he admitted using methamphetamine four days earlier. He also tested positive for methamphetamine and amphetamine. The Department also discovered that the children had been regularly left in the care of Mother, even though Father was instructed not to leave them unsupervised in the care of Mother.[3] The Department removed the children from their parents' care, and subsequently filed a petition for protection, conservatorship, and termination, which sought, among other things, temporary managing conservatorship of the children and termination of the parental rights of Mother, Father, and an alleged father.

At the short final hearing held on December 11, 2023,[4] Candacy Shupe, a caseworker for the Department, testified that, to her knowledge, Mother had not participated in a service plan, and Shupe agreed that Mother had not "done anything [she was] supposed to do." She also testified that the Department sought termination of Mother's parental rights because of her failure to work the service plan and her substance use. However, she also testified that Mother

---

[3]In December 2021, Mother and her newborn tested positive for methamphetamine shortly after the baby's birth. The child was removed from Mother's care, and the Department's case involving Mother and the baby was active in Lamar County at the time of the removal of the children in this case.

[4]The testimony at the final hearing consists of slightly more than forty-six pages in the reporter's record.

had not been served with citation until July 21, 2023. Shupe testified that Mother had been asked to drug test in Rockport at some time after she was served and that, on October 17, Shupe sent her a text message asking her to submit to a drug test but received no response. She also admitted that Mother had not been drug tested during this case.

Regarding the service plan, Shupe testified that, from July until the time of the hearing, she had asked Mother to do services but did not specify what services she asked her to do. She averred that Mother was sent a copy of the service plan at an address in either Aransas Pass or Rockport. Although Mother attended a hearing in August, Shupe testified that she did not give her a copy of the service plan that day. She also testified that Mother had not signed the service plan. Shupe also testified that Mother had not contacted her regarding completing services and that she had not had any meaningful conversation with Mother about Mother coming to her office for what she had to do to take care of her children. Clint Hocutt, with Court Appointed Special Advocates, also testified that Mother had not reached out to him to get services or to find out what she needed to do to have the children returned.

Shupe testified that the Department sought to terminate Father's parental rights based on incarceration and drug use. She also testified that the children tested positive for methamphetamine and that they were exposed to the drug at the house of Father's daughter.[5] Shupe testified that Father had been told that he was not to let his daughter watch the children because of her use of marihuana and methamphetamine, but he left the children with her on September 6.

---

[5]The person referred to as the daughter of Father appears to be the same person referred to as the children's adult sibling.

The evidence shows that, during this case, Father was convicted of endangering each of the children. Certified judgments of those convictions showed that Father was convicted on June 12, 2023, of one count of second-degree-felony endangering a child and three counts of state-jail-felony endangering a child.

Father was sentenced to eight years' imprisonment for the second-degree felony and to eighteen month's confinement for each of the state-jail felonies, with the sentences to run concurrently.

Father admitted that he pled guilty to the child endangerment charges because the children tested positive for methamphetamine. Although he was incarcerated and did not know when he would be paroled, he testified that he could be coming before the parole board in March and that he would become parole eligible at any time after March. Mother did not testify at trial.

After the hearing, the trial court entered its order terminating the parental rights of Mother to the children, terminating the parental rights of Father to K.A.W. and K.L.C., and appointing the Department as permanent managing conservator of the children. On appeal, Mother and Father challenge the termination of their parental rights.

## II.     Standard of Review

"The natural right existing between parents and their children is of constitutional dimensions." *In re E.J.Z.*, 547 S.W.3d 339, 343 (Tex. App.—Texarkana 2018, no pet.) (quoting *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). "Both [the Texas Supreme] Court and the Supreme Court of the United States have long recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *In re R.J.G.*, 681

5

S.W.3d 370, 373 (Tex. 2023). "Thus, Texas law rightly requires that, before infringing on a parent's right to care for and have custody of her child[ren], the State . . . must demonstrate to a court that governmental intrusion is warranted." *Id.* "The bar is—appropriately—highest when the State seeks a judgment effecting the outright and permanent termination of the parent-child relationship." *Id.*

"Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *In re E.J.Z.*, 547 S.W.3d at 343 (quoting *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014)). As a result, we must "engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights.'" *Id.* (quoting *In re A.B.*, 437 S.W.3d at 500). "[I]nvoluntary termination statutes are strictly construed in favor of the parent." *Id.* (alteration in original) (quoting *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied)).

"In order to terminate parental rights, the trial court must find, by clear and convincing evidence, that the parent has engaged in at least one statutory ground for termination and that termination is in the child[ren]'s best interest." *Id.* (citing TEX. FAM. CODE ANN. § 161.001; *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012)). "'Clear and convincing evidence' is that 'degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *Id.* (quoting TEX. FAM. CODE ANN. § 101.007); *see In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009)). "This standard of proof necessarily affects our review of the evidence." *Id.*

6

"In our legal sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder reasonably could have formed a firm belief or conviction that the grounds for termination were proven." *In re L.E.S.*, 471 S.W.3d 915, 920 (Tex. App.—Texarkana 2015, no pet.) (citing *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.L.B.*, 349 S.W.3d 836, 846 (Tex. App.—Texarkana 2011, no pet.)). "We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-finder could have reasonably disbelieved or the credibility of which reasonably could be doubted." *Id.* (citing *In re J.P.B.*, 180 S.W.3d at 573).

"In our review of factual sufficiency, we give due consideration to evidence the trial court could have reasonably found to be clear and convincing." *Id.* (citing *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam)). Also, we "consider whether disputed evidence is such that a reasonable fact[-]finder could not have resolved that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). "If, in light of the entire record, the disputed evidence that a reasonable fact[-]finder could not have credited in favor of the finding is so significant that a fact[-]finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re L.E.S.*, 471 S.W.3d at 920 (quoting *J.F.C.*, 96 S.W.3d at 266). "In applying this standard, '[a]n appellate court's review must not be so rigorous that the only fact[-]findings that could withstand review are those established beyond a reasonable doubt.'" *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (first alteration in original) (quoting *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002)).

"'[I]n making this determination,' we must undertake 'an exacting review of the entire record with a healthy regard for the constitutional interests at stake.'" *In re L.E.S.*, 471 S.W.3d at 920 (alteration in original) (quoting *In re A.B.*, 437 S.W.3d at 503). However, "[o]nly one predicate finding under Section 161.001[b](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child[ren]'s best interest." *Id.* at 923 (quoting *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied)).

### III. Termination of Mother's Parental Rights Under Statutory Ground O Was Not Supported by Legally Sufficient Evidence

#### A. Termination of Parental Rights Under Statutory Ground O

To terminate parental rights under statutory ground O, the Department must establish, by clear and convincing evidence, that: "(1) the parent must have failed to comply with the provisions of a court order, which (2) specifically established the actions necessary for the parent to receive custody of the child[ren] from the Department, which serves as the permanent or temporary conservator of the child[ren]." *In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019) (per curiam). Under statutory ground O, "the court's order describing the actions necessary to obtain the return of the child[ren] must be 'sufficiently specific to warrant termination of parental rights for failure to comply with it.'" *In re A.L.R.*, 646 S.W.3d 833, 835 (Tex. 2022) (per curiam) (quoting *In re N.G.*, 577 S.W.3d at 238). Statutory ground O "contemplates direct, specifically required actions." *Id.* at 837 (citing TEX. FAM. CODE ANN. § 161.001(b)(1)(O)).

The Texas Family Code contemplates that this specificity can be accomplished by the trial court reviewing the service plan for the children's parents prepared by the Department and incorporating the service plan into the orders of the court. *See* TEX. FAM. CODE ANN.

§ 263.202(b-1) ("After reviewing the service plan and making any necessary modifications, the court shall incorporate the service plan into the orders of the court and may render additional appropriate orders to implement or require compliance with the plan."). Further, the service plan "must be written 'in a manner that is clear and understandable to the parent in order to facilitate the parent's ability to follow the requirements of the service plan.'" *In re R.J.G.*, 681 S.W.3d at 377 (quoting TEX. FAM. CODE ANN. § 263.102(d)). As the Texas Supreme Court has noted, the Texas Family Code sets out the requirements of a service plan:

> Among other things, the plan must:
>
> - be specific;
>
> - be prepared by the Department in conference with the parents;
>
> - state appropriate deadlines;
>
> - specify the primary permanency goal and at least one alternative permanency goal;
>
> - state the actions and responsibilities that are necessary for the parents to take to achieve the plan goal during the period of the service plan;
>
> - state any specific skills or knowledge that the parents must acquire or learn, as well as any behavioral changes the parents must exhibit; and
>
> - prescribe any other term or condition that the Department determines to be necessary to the service plan's success.

*Id.* (citing TEX. FAM. CODE ANN. § 263.102(a)(1), (3)–(5), (7), (8), (11)).

9

The Texas Supreme Court has made clear that, in order to terminate parental rights under statutory ground O, the "trial court must necessarily decide that a court order is sufficiently specific for the parent[s] to comply" with the order. *In re N.G.*, 577 S.W.3d at 239. As a result, "a trial court cannot terminate parental rights for failure to comply without first considering the order's specificity." *Id.* (citing TEX. FAM. CODE ANN. § 161.001(b)(1)(O)).

Also, in considering a factual or legal sufficiency challenge to a termination under statutory ground O, an appellate court must consider the order's specificity. *See id.* If an appellate court upholds a termination under statutory ground O without considering the order's specificity, it errs. *Id.* The examination of the specificity of the order includes the specificity of the service plan when the trial court's order incorporates the service plan. *Id.*

**B.     Analysis**

In her first issue, Mother asserts that there is factually and legally insufficient evidence to support the trial court's termination of her parental rights under statutory ground O because there is neither an order nor a service plan in the record that "specifically established the actions necessary for [her] to obtain the return of the child[ren]." TEX. FAM. CODE ANN. § 161.001(b)(1)(O). Further, because there was no testimony as to the details of the service plan, she argues, the Department did not prove that she failed to comply with the service plan by clear and convincing proof.

Even though the trial court took judicial notice of the record, Mother's service plan was not filed and, as a result, is not contained in the appellate record.[6] Neither was the service plan

---

[6]The Red River County district clerk confirmed that Mother's service plan was not filed in the records of this case.

introduced into evidence at trial. As the Texas Supreme Court has recently explained, "[T]he statutory text [of ground O] permits termination only if the provision with which the parent failed to comply was 'specifically established' in the written court-ordered service plan." *In re R.J.G.*, 681 S.W.3d at 373. As a result, "[t]he predicate ground for termination under [statutory ground] (O) cannot be proven by clear and convincing evidence if premised on a plan requirement that is unwritten, and thus supplied only by the caseworker's oral testimony, or on one that is written but vague." *Id.*

Nevertheless, the Department contends that the terms of the service plan were established in its permanency report filed on May 26, 2023, under the heading "Services and Orders Needed." However, there is no indication in that report that the services and orders listed are included in Mother's service plan, and there was no trial testimony that the list was composed of Mother's service plan. Also, there is no trial court order that orders Mother to obtain the services listed in that report, or that approves the list in that report, as is required of a service plan. *See* TEX. FAM. CODE ANN. § 263.202(b-1).

Although Mother's service plan was not filed in the record, the trial court incorporated the service plan into its nunc pro tunc order entered after the status hearing held on October 11, 2022. As a result, a consideration of the specificity of the service plan is a necessary component of our sufficiency analysis. *In re N.G.*, 577 S.W.3d at 339. Because the service plan was not filed in the trial court's record[7] and was not introduced into evidence at trial, the trial court could

---

[7]The Department cites several cases in which courts of appeals have overruled sufficiency challenges to termination of parental rights under statutory ground O when the trial court took judicial notice of its file, even though the service plan was not introduced into evidence. However, each of those cases was decided before *In re R.J.G.*, which holds that the service plan must be written and cannot be "supplied only by the caseworker's oral testimony," and

not have considered whether it was sufficiently specific for Mother to comply with it. Likewise, because the service plan is not contained in the appellate record, we cannot consider whether it was sufficiently specific. As a result, we cannot uphold the termination of Mother's parental rights based on her alleged failure to comply with the service plan.[8] *See id.* For that reason, we

---

before *In re N.G.*, which requires appellate courts to consider the specificity of the terms of the service plan when it is incorporated into a trial court's order. *In re R.J.G.*, 681 S.W.3d at 373; *see In re N.G.*, 577 S.W.3d at 239. When, as here, the service plan is incorporated into the trial court's order but is not contained in the record and not introduced into evidence, the appellate court is unable to consider the specificity of the service plan. As a result, we would err by upholding a termination under statutory ground O without considering the specificity of the service plan. *In re N.G.*, 577 S.W.3d at 239.

[8]The Department also points to the temporary order entered on September 22, 2022, after the adversary hearing. In that order, the trial court ordered Mother (1) to "submit to and cooperate fully in the preparation of the court-ordered drug and alcohol dependency assessment," (2) to "submit urine samples, saliva samples, or hair follicle samples, as directed by the Department and at times to be determined by the Department, for analysis by a drug testing laboratory," and (3) "to comply with each requirement set out in the Department's original, or any amended, service plan during the pendency of this suit." The Department acknowledges that, "[t]o issue a valid and binding judgment or order, a court must have both subject-matter jurisdiction over a case and personal jurisdiction over the party it purports to bind." *In re Guardianship of Fairley*, 650 S.W.3d 372, 379 (Tex. 2022) (citing *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 7–8 (Tex. 2021)). It also acknowledges that the trial court did not have personal jurisdiction over Mother until she was served on July 21, 2023. Nevertheless, the Department argues that Mother was bound by the temporary order because the permanency hearing order entered on August 22, 2023, stated that "all previous orders issued by [the trial] Court shall continue without modification." Even assuming Mother was bound by the temporary order after the entry of the August 22 order, there is no order of the trial court entered after that date in the appellate record that specifically directed Mother to take a drug and alcohol dependency assessment with any named provider.

Further, in *In re N.G.*, the Texas Supreme Court likened the specificity required of an order under statutory ground O to that required under a contempt order in a divorce decree or child-support order. *In re N.G.*, 577 S.W.3d at 238. It noted that, in those cases, before a parent could be held in contempt for violating an order, the order "must 'set forth the terms of compliance in clear, specific and unambiguous terms so that the person charged with obeying the decree will readily know exactly what duties and obligations are imposed upon him.'" *Id.* (quoting *Ex parte Acker*, 949 S.W.2d 314, 317 (Tex. 1997) (orig. proceeding)). The temporary order requiring Mother to "submit urine samples, saliva samples, or hair follicle samples, as directed by the Department and at times to be determined by the Department" specifies neither where and to what provider Mother was required to submit those samples, nor the time frame within which Mother had to submit the samples. Because the order did not state what Mother was required to do "in clear, specific and unambiguous terms" so that Mother "readily [knew] what duties and obligations [were] imposed upon" her, we find that this order did not meet the specificity required under statutory ground O. *Id.* (quoting *Ex parte Acker*, 949 S.W.2d at 317). As a result, we find that there was no evidence that Mother failed to comply with an order of the trial court that was "sufficiently specific to warrant termination of parental rights for failure to comply with it." *In re A.L.R.*, 646 S.W.3d at 835 (quoting *In re N.G.*, 577 S.W.3d at 238).

find that termination of Mother's parental rights under statutory ground O was not supported by legally sufficient evidence. We sustain this issue.

## IV. Termination of Mother's Parental Rights Under Statutory Ground P Was Not Supported by Legally Sufficient Evidence

In order to terminate parental rights under statutory ground P, the Department must show, by clear and convincing evidence, that the parent (1) "used a controlled substance . . . in a manner that endangered the health or safety of the child" and (2) either (a) "failed to complete a court-ordered substance abuse treatment program" or (b) "after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance." TEX. FAM. CODE ANN. § 161.001(b)(1)(P). Mother asserts that the evidence was legally and factually insufficient to support the termination of her parental rights under statutory ground P because there was no evidence that the trial court ordered Mother to complete a substance abuse treatment program. The Department did not brief this issue on appeal.

On appeal, the Department does not direct us to, and we have not found, any order in the appellate record in which Mother was ordered to complete a substance abuse treatment program. As a result, we find there is no evidence that she "failed to complete a court-ordered substance abuse treatment program" or that, after she completed such a program, she "continued to abuse a controlled substance." TEX. FAM. CODE ANN. § 161.001(b)(1)(P). For that reason, we find that termination of Mother's parental rights under statutory ground P was not supported by legally sufficient evidence. We sustain this issue.

13

**V.    Legally and Factually Sufficient Evidence Supports Termination of Father's Parental Rights Under Statutory Ground Q**

**A.    Termination of Parental Rights Under Statutory Ground Q**

In order to terminate parental rights under statutory ground Q, the Department must show, "based on clear and convincing evidence[,] that the parent 'knowingly engaged in criminal conduct,' was convicted of an offense, and will be confined or imprisoned and 'unable to care for the child[ren] for not less than two years.'" *In re C.L.E.E.G.*, 639 S.W.3d 696, 697–98 (Tex. 2022) (per curiam) (quoting TEX. FAM. CODE ANN. § 161.001(b)(1)(Q)). Because termination under statutory ground Q is "based on an extended prison sentence," "the State [may] act in *anticipation* of a parent's abandonment of the child[ren] and not just in response to it." *Id.* at 698–99 (quoting *In re A.V.*, 113 S.W.3d 355, 360 (Tex. 2003)).

The Texas Supreme Court has "explained that the fact that a parent is serving a prison sentence that does not expire for at least two more years 'does not automatically meet subsection Q's two-year imprisonment requirement' because 'evidence of the availability of parole is relevant.'" *Id.* at 699 (quoting *In re H.R.M.*, 209 S.W.3d at 108–09). Nevertheless, "the fact[-]finder, '[a]s the sole arbiter when assessing the credibility and demeanor of witnesses,' is 'free to disregard' the parent's parole-related testimony, especially when it constitutes 'barely more than conjecture.'" *Id.* (second alteration in original) (quoting *In re H.R.M.*, 209 S.W.3d at 109). Further, because of the speculative nature of parole decisions, "the parent's 'introduction of parole-related evidence' establishing 'the mere possibility of parole' does not 'prevent a fact[-]finder from forming a firm conviction or belief that the parent will remain incarcerated for at least two years.'" *Id.* (quoting *In re H.R.M.*, 209 S.W.3d at 109).

Statutory ground Q "focuses on the parent's future imprisonment and inability to care for the child[ren], not the criminal conduct that the parent committed in the past." *In re A.V.*, 113 S.W.3d 355, 360 (Tex. 2003). "By looking at future imprisonment and inability to care for the child[ren], subsection Q purports to protect children whose parents will be incarcerated for periods exceeding two years after termination proceedings begin." *Id.* at 360–61.

## B. Analysis

Father asserts that the evidence was legally and factually insufficient to support termination of his parental rights under statutory ground Q. He does not challenge the sufficiency of the evidence of his commission of an offense, his conviction, or that he will be unable to care for his children for not less than two years. Rather, he only challenges the sufficiency of the evidence that he will be incarcerated for not less than two years.

The evidence shows that Father was convicted on June 12, 2023, of four counts of child endangerment and was sentenced to eight years' imprisonment on one count and eighteen months' confinement on each of the other counts, with the sentences to run concurrently. The evidence also shows that Father had been in jail for 279 days prior to his convictions. Thus, if Father serves his full sentence, he will be incarcerated for almost six years beyond the two-year period under statutory ground Q.

At trial, Father testified that he had no idea when his parole eligibility date was but that he "could be coming back up in March" and that "any time after March 1 [he could] become parole eligible." He also testified that he saw the parole board "in August and they usually set it

15

off about a year but they - - anywhere between [six] and [nine] months [they would] bring you back up."

As the Texas Supreme Court has noted,

> Mere introduction of parole-related evidence, however, does not prevent a fact[-]finder from forming a firm conviction or belief that the parent will remain incarcerated for at least two years. Parole decisions are inherently speculative, and while all inmates doubtless hope for early release and can take positive steps to improve their odds, the decision rests entirely within the parole board's discretion.

*In re H.R.M.*, 209 S.W.3d at 109 (citations omitted). In this case, although the trial court could take into account that it was possible that Father could be released within the two-year period, it was also free to disregard that evidence as "barely more than conjecture." *Id.* As a result, the trial court could have reasonably formed a firm conviction or belief that Father would be incarcerated for at least two years.

Because the evidence shows that Father was incarcerated for almost the entirety of this termination proceeding and faced a maximum imprisonment far beyond the two-year period under statutory ground Q, and because he did not challenge the sufficiency of evidence supporting the other elements of that ground, we find that legally and factually sufficient evidence supported the termination of his parental rights under statutory ground Q.[9] We overrule this issue.

---

[9]Because the trial court's finding under one statutory ground and its finding that termination was in the best interests of the children will support the termination of Father's parental rights, we need not address Father's remaining issue.

16

## VI.    Conclusion

For the reasons stated, we reverse the trial court's order of termination in part, and we render judgment vacating those portions of the trial court's order of termination relating to the termination of Mother's parental rights. We affirm the remainder of the trial court's termination order. *See In re R.J.G.*, 681 S.W.3d at 383.

Scott E. Stevens<br>
Chief Justice

Date Submitted:    April 15, 2024
Date Decided:    April 19, 2024